John R. CARTER d/b/a Bay City Foundry Co., Plaintiff,

v.

CMTA–MOLDERS & ALLIED WORKERS HEALTH & WELFARE TRUST, etc., Defendants.

No. C–79–0248–WWS.

United States District Court, N.D. California.

May 11, 1983.

Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for plaintiff.

Douglas M. Moore, Hale Kronenberg, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION
## AND ORDER

SCHWARZER, District Judge.

*Background Facts*

Plaintiff John R. Carter seeks to recover contributions which he made to the defendant trust funds on behalf of his employees. In November 1973, Carter purchased the assets of Bay City Foundry Co. from George Romero, unaware that Romero had signed agreements under which he became a contributing employer and subscriber to the trust funds. Carter retained four of Romero's six employees and told them that their pension, health, and welfare benefits would be unchanged. Shortly after the acquisition, Carter began receiving monthly invoices from the trust funds. He paid the amounts billed from December 1973 through July 1978. Carter alleges that these contributions violated § 302(c)(5)(B) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5)(B), because he never executed a written agreement with the trust funds.

Both parties moved for summary judgment, and on April 28, 1980, the Court granted defendants' motion. 489 F.Supp. 704 (N.D.Cal.1980). The Court held that Carter had impliedly assumed the obligations of his predecessor to the trust funds; that there thus existed a written agreement between Carter and the funds; and that the policies underlying § 302 did not require that a successor employer *expressly* assume the obligations of his predecessor or personally execute a written agreement before making trust fund contributions.

On appeal the Ninth Circuit, 685 F.2d 440, reversed and remanded "for further factual determinations," holding that "[w]hether Carter assumed the agreement is a question of fact." This Court directed the parties to file a statement setting forth: "(1) which of the evidentiary facts asserted in the prior motions for summary judgment are disputed; and (2) what, if any, additional evidence counsel proposes to offer at trial." The parties have been unable to identify any disputed material facts, wish to offer no additional evidence, and have resubmitted the matter upon stipulation that it is ripe for summary judgment. Accordingly this matter is now properly before the Court for decision.

*Discussion*

Remand of this case has caused the Court to reexamine its prior ruling granting defendants' motion. Upon reflection, it appears to the Court that that ruling failed to distinguish between the two possible bases for imposing liability on Carter under the agreements previously executed by Romero: (1) liability as a matter of law by reason of Carter's having succeeded to the business; (2) liability by reason of Carter's implied assumption of the agreements.

*Assumption as a Matter of Law*

Federal law governs the obligations of a successor employer under agreements made by his predecessor with labor organizations representing his employees.[1] In a series of decisions, the Supreme Court has outlined the circumstances under which a successor is bound by his predecessor's agreements. The decisions may be summarized as follows: if the new employer maintains a "substantial continuity of identity in the business enterprise," *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 551, 84 S.Ct. 909, 915, 11 L.Ed.2d 898 (1964), federal law imposes on him his predecessor's duties to arbitrate, *id.,* and to bargain, *NLRB v. Burns Security Services,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), with the union. But while successor employers "may be bound to recognize and to bargain with the union, they are not bound

---

1. There is no apparent reason why a subscriber's agreement should for purposes of this case be treated differently from a collective bargaining agreement in view of the federal interests involved in both. The obligation to contribute to a trust fund is enforceable under § 301 of the LMRA, 29 U.S.C. § 185, and the administration of such funds is extensively regulated by the provisions of ERISA, 29 U.S.C. § 1001 *et seq.*

by the substantive provisions of a collective bargaining contract negotiated by their predecessors but not agreed to or assumed by them." *Burns,* 406 U.S. at 284, 92 S.Ct. at 1580; *see Hospital and Industrial Workers v. Pasatiempo Dev. Corp.,* 627 F.2d 1011, 1012 (9th Cir.1980) (successor bound only if he "expressly or impliedly assumes" substantive obligations). As the Court explained in *Burns,* the source of the duty to bargain is not the collective bargaining contract but the existence of a bargaining unit recognized by federal labor law. The obligation to comply with the substantive provisions of an agreement, however, is a function of consent. 406 U.S. at 284–87, 92 S.Ct. at 1580–82. Thus it is clear that Carter could not become bound by the substantive provisions of the agreements signed by his predecessor simply by reason of having succeeded to the business. Liability could be based only on a finding that by acts or words, Carter demonstrated his willingness to be bound by these agreements.

*Implied Assumption*

▮▮▮▮ Whether Carter, who did not expressly assume those agreements, can be found to have assumed them impliedly is a question of state law. Under California law one who purchases the assets of a corporation

> does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

*Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal. Rptr. 574, 578, 560 P.2d 3, 7 (1977). Only the first of these exceptions has a bearing on this case. There was no merger here; no fraudulent purpose is alleged; and Carter's business was not a "mere continuation" of Romero's, for there was a change of ownership that resulted from an arms-length transaction. *Id.; see also Ortiz v. South Bend Lathe,* 46 Cal.App.3d 842, 120 Cal.Rptr. 556, 558 (1975).

▮▮▮▮ The undisputed facts establish that Carter was unaware of the agreements when he purchased the assets from Romero. The purchase and sale agreement was silent with respect to the assumption of contractual or other liabilities, and there is no evidence that Carter and Romero discussed the matter. When the trustees later repeatedly asked Carter to execute a new subscriber's agreement, he refused. The evidence does not support a finding that Carter consented to be bound by his predecessor's agreements.

▮▮▮▮ He did make contributions when billed by the trust until the union was decertified in 1978. Those payments, however, are irrelevant. *See* 489 F.Supp. at 706 n. 3. At most they could show an implied new agreement *between Carter and the funds* (as opposed to an implied assumption of the former agreements). Section 302(c)(5)(B) of the LMRA makes it unlawful for an employer to make trust fund contributions unless "the detailed basis on which such payments are to be made is specified in a written agreement." An agreement implied from a course of dealing between Carter and the funds would obviously not satisfy this requirement. *See Moglia v. Geoghegan,* 403 F.2d 110, 117–18 (2d Cir.1968), *cert. denied,* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969). The contributions would be lawful only if Carter had assumed the obligations *of Romero* under Romero's written agreement with the funds, something he clearly did not do. His direct dealings with the funds cannot be taken as evidence of such an assumption.

▮▮▮▮ Finally, Carter's promise to his employees after acquiring Bay City Foundry to maintain their rates of pay and fringe benefits is also irrelevant to the issue of assumption. A promise to third-party beneficiaries cannot create a contract between the principals. In this case the relevant transaction is that between Carter and Romero. *See Kloberdanz v. Joy Mfg. Co.,* 288 F.Supp. 817, 821 (D.Colo.1968) (applying California law); *Ortiz v. South Bend Lathe,* 120 Cal.Rptr. at 558.

*Conclusion*

█ Since Carter neither assumed Romero's agreement nor executed his own agreement with the funds, § 302 makes it unlawful for him to make contributions to these trusts. It does not follow, however, that he is entitled to recover earlier payments. The Ninth Circuit has indicated that before permitting or requiring such a refund, a court must consider other relevant policies. *Producers Dairy Delivery Co. v. Western Conference of Teamsters Pension Trust Fund,* 654 F.2d 625 (9th Cir. 1981). Here, although Carter was not required to do so, he voluntarily agreed to maintain the status quo with respect to wages and fringe benefits. Had he done otherwise, the employees through their collective bargaining representative would have had the opportunity to assert their right to bargain and take other collective action to protect their economic interests; they might, for example, have insisted that Carter execute new agreements with the trusts. To permit the employer many years later to recoup ostensibly lawful contributions voluntarily made would frustrate the policy to promote and protect collective bargaining under the Labor Relations Act.

For these reasons, the Court concludes that plaintiff is neither obligated to make contributions to the trust funds nor entitled to recover past contributions. Inasmuch as only the latter form of relief is sought, defendants' motion for summary judgment is granted.

IT IS SO ORDERED.