566 F.Supp. 1426 (1983)
R.V. CLOUD CO., INC., Plaintiff,
v.
WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, A Trust Fund et al., Defendants.
and
Related Counter-Claim.
No. C-82-5342-WWS.
United States District Court, N.D. California.
July 8, 1983.
*1427 Harry Finkle, Finkle & Stroup, Fresno, Cal., for plaintiff.
Franklin Silver, Beeson, Tayer & Silbert, Robert A. Gordon, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants.

MEMORANDUM OF OPINION AND ORDER
SCHWARZER, District Judge.
R.V. Cloud Co. seeks in this action to recover trust fund contributions made on behalf of its employees from June 1979 through June 1982. Both Cloud and the numerous defendants, including the Western Conference of Teamsters Pension Fund, its various trustees, and Teamsters Local 287 and its officers, move for summary judgment.

The Undisputed Facts
On May 31, 1979, Cloud's collective bargaining agreement with the Union expired. In September the parties reached an oral agreement whose terms were ratified by the employees in the bargaining unit.
On December 12, 1979, the Trust Fund sent a letter to Cloud and the Union advising them that the Fund had not received a copy of any new bargaining agreement and that if the Fund did not receive such a copy within 30 days, no further contributions would be accepted; any contributions received since May 31, 1979, would be placed into a segregated account; any annuities inadvertently purchased would be cancelled; and Cloud's pension account would be dropped.
On December 18, 1979, the Union's Secretary-Treasurer, Robert Spisak, signed and forwarded to Cloud a collective bargaining agreement (the "new agreement"). Cloud signed this agreement on January 2, 1980, but only after deleting three provisions: (1) § 20, the automatic renewal provision; (2) the clause in § 18 of Addendum E under which Cloud would be bound by such rules and regulations "as may be established" by the Trustees; and (3) the provision, also in § 18, that Cloud would pay attorney's fees and costs if unsuccessful in a collection action.
When Spisak received the new agreement as altered by Cloud, he told Cloud that the changes did not conform to what had been agreed in the negotiations. Cloud asked Spisak to initial the changes nevertheless but Spisak refused.
Cloud continued to make contributions at the rates specified in the new agreement. Its payments were accompanied by forms which certified that the company was acting in accordance with the terms of a valid pension agreement. Cloud did not, however, sign a subscriber's agreement or a pension certification.
On June 20, 1980, and again on September 3, 1980, the Fund mailed to Cloud and the Union letters substantially identical to its letter of December 12, 1979. Cloud did not respond; the Union responded on October 13, 1980, only by assuring the Fund that a contract had been signed "in the last six months."
In June 1981 one of Cloud's employees applied for pension benefits and was denied credit for time worked since May 31, 1979.
In June 1982 Cloud and the Union began negotiations for a new contract. On July 20, 1982, the Fund's Contract Supervisor responded to a letter from Cloud inquiring into the company's potential withdrawal liability. She wrote:
Secondly, in response to your question as to what happens to those contributions which have been made after the expiration date of the last contract, (May 31, 1979), please be advised that all monies paid in excess of seventy cents (70¢) which was the last rate in effect under the prior Agreement, will be refunded to the employer. However, all monies paid at the seventy cent (70¢) rate will be retained by the Trust and credited to the individual accounts of those employees performing bargaining unit work.
Furthermore, the company and Local have been jointly notified that if we do not receive a signed Labor Agreement and Employer-Union Pension Certification *1428 within the very near future, the accounts will be dropped.
On September 3, 1982, Cloud demanded a refund of the contributions paid since June of 1979. The refund was denied and this action followed. The Trust Fund has counterclaimed for an accounting. All parties have moved for summary judgment.

Discussion
Cloud seeks recovery of the contributions it made to the Trust Fund following expiration of the collective bargaining agreement on May 31, 1979, on the theory that following that date, it had no contractual obligation to make contributions. The defendants contend that a new agreement came into existence and that in any event the parties by their conduct demonstrated their intention to be bound by the terms of the new agreement.
The first issue, therefore, is whether after May 31, 1979, Cloud was contractually obligated to make contributions to the Trust Fund. Cloud argues that by making interlineations in the written agreement submitted by the Union, it rejected the Union's offer and made a counteroffer which was never accepted; the defendants argue that the modifications were trivial and were impliedly accepted by the parties' "living under the agreement as modified." Defendants assert that Cloud's conduct manifested an intent to abide by the terms of the written agreement; Cloud says that its conduct was inconsistent with the agreement in a variety of ways.
While the parties disagree over certain factual details, the material facts are not in dispute. The defendant union states those facts as follows:
On or about January 2, 1980, Cloud executed the 1979-82 Agreement with four modifications in the language: section 4 (at page 6), section 20 (at page 16), and the contract addendums at pages E-6 and E-7. The executed agreement was returned to Spisak without a cover letter, but in a subsequent telephone conversation Spisak contended that Cloud's changes were at variance with what had been agreed to in negotiations, and Cloud contended that he made the changes to conform with what had been agreed to in negotiations. Cloud asked that Spisak initial the changes, and Spisak refused.
Plaintiff Cloud states them as follows:
All parties are now in agreement that shortly after January 2, 1980 (when Stephen Cloud made the interlineations and deletions, signed the document, and returned it to the Union for its approval), Spisak flatly refused to enter into any agreement which contained those terms. Spisak fully discussed all the different changes with Mr. Cloud at that time. Most importantly, Spisak refused to initial the changes as Stephen Cloud's requested.
The undisputed facts thus establish that at no time did the parties mutually assent to a writing which set forth the agreed terms of a collective bargaining agreement. It may well be that the differences which remained between them were minor, but they were of sufficient importance to prevent Cloud from signing the version of the agreement submitted by the union and the union from signing the revised version submitted by Cloud.
The controlling principle of law is stated in § 302(c) of the Labor Management Relations Act, which provides that it is unlawful for a labor organization, such as the Trust Fund, to accept contributions unless "the detailed basis on which such payments are to be made is specified in a written agreement with the employer ...." 29 U.S.C. § 186(c)(5)(B) In Thurber v. Western Conf. of Teamsters Pension Plan, 542 F.2d 1106, 1108 (9th Cir.1976), the Ninth Circuit, following the leading decision in Moglia v. Geoghegan, 403 F.2d 110 (2d Cir.1968), cert. denied, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), held that the policy underlying § 302(c) mandates rigid adherence to its provisions:
Federal regulation of employee benefit trusts under § 302(c)(5)(B) was premised on the purpose of insuring that the trust funds were not tampered with or used for illicit purposes. See Alvares v. Erickson, *1429 514 F.2d 156, 164 (9 Cir.1975). In accord with this purpose the Second Circuit, in a well considered opinion, held that "any payment made by an employer to an employee representative, and this includes trustees administering a pension trust fund ... and the receipt of such payments by an employee representative are absolutely forbidden unless there is a written agreement between the employer and the union specifying the basis upon which the payments are made.... The reason for the rigid structure of Section 302 is to insure that employer contributions are only for a proper purpose and to insure that the benefits from the established fund reach only the proper parties." Moglia v. Geoghegan, 403 F.2d 110, 116 (2d Cir.1968).
See also United States v. Ryan, 350 U.S. 299, 304-5, 76 S.Ct. 400, 404-05, 100 L.Ed. 335 (1956).
In the absence of a written agreement (i.e. a document accepted by both the union and the employer) setting forth the detailed basis for contributions, it was unlawful for Cloud to make contributions.
The Trust Fund's argument that § 302 is satisfied because the parties had reached agreement on the contribution obligation is without merit. Congress plainly insisted that there be a written agreement; that requirement is not satisfied by writings which, although consistent in material part, were not acceptable to the parties. As the court said in Moglia,
In the second place, ratification and adoption are only forms of acceptance of a contract and must conform to the general principles governing the formation of contracts. Two essential elements of a contract formation are mutuality of agreement and mutuality of obligation. See generally 17 C.J.S. Contracts § 1(1) (1962). Both of these elements are missing in this case. The union demanded the acceptance of a complete collective bargaining agreement along with the trust agreement. Elmhurst did not appear to be willing to accept these terms at any time. In such a situation it would be ridiculous to assert that there was agreement between the parties and a mutuality of obligation. Therefore, on the record as made, we hold that there was no ratification of, or any adoption of, the collective bargaining agreement by Elmhurst.
403 F.2d at 118.
Hinson v. NLRB, 428 F.2d 133 (8th Cir. 1970), on which the Trust Fund relies, does not support its position. There the court stated in dictum that a trust fund agreement can itself satisfy § 302 in the absence of a valid collective bargaining agreement between the parties; section 302 requires only a "written agreement," not a written collective bargaining agreement. The Hinson dictum is unassailable but irrelevant here. Section 302 requires that there be a contract. In this case it is undisputed that the requisite assent was never given since the parties failed to reach agreement on all the terms. Hence no contract for the 1979-1982 period ever came into existence and the requirement of § 302 was not met.
The Trust Fund also contends that § 302 was satisfied because the conduct of the parties conformed to the terms of the new agreement, citing Audit Services, Inc. v. Rolfson, 641 F.2d 757 (9th Cir.1981). Audit Services was an action to recover unpaid contributions from a successor employer who was found to have assumed his predecessor's collective bargaining agreement. Recognizing that a successor is not automatically bound by the substantive provisions of an agreement negotiated by his predecessor, see NLRB v. Burns Int'l Security Services, 406 U.S. 272, 284, 92 S.Ct. 1571, 1580, 32 L.Ed.2d 61 (1972), the Ninth Circuit held that the employer had specifically assumed his predecessor's obligation to contribute to a trust fund. The § 302 issue did not arise in Audit Services because there was a written agreement specifying the basis for contributions. The issue there was whether the successor employer had stepped into the shoes of his predecessor and so become a party to that agreement. The finding that he did has no bearing on the decision in this case, which turns on *1430 whether there was an agreement satisfying § 302.[1] Cf. Carter v. CMTA-Molders & Allied Workers Health & Welfare Trust, 563 F.Supp. 244 (N.D.Cal.1983); Moglia, quoted at 7, supra.
Viewing the facts in the light most favorable to defendants (i.e. the proponents of an agreement), the Court concludes that as a matter of law no written agreement complying with § 302(c) could be found to exist.[2] From this it follows that Cloud's motion for summary judgment on the Trust Fund's counterclaim for an accounting must be granted.
It does not follow, however, that Cloud is entitled to recover its past contributions. The second issue raised by the motion is whether, assuming the facts asserted by Cloud are true and all inferences are drawn in its favor, the Ninth Circuit's decision in Producers Dairy Delivery Co., Inc. v. Western Conference of Teamsters Pension Trust Fund, 654 F.2d 625 (9th Cir.1981), precludes recovery of those contributions.
In that case, the court held that an employer has no right of action under § 302 to recover contributions made after an impasse had been reached in labor negotiations. Its remedy in that situation is to seek injunctive relief from further demands for payment, or to stop payments and assert the existence of an impasse as a defense to an unfair labor practice charge for ceasing contributions. The employer must take an affirmative step of this kind so that its employees will "not be misled into believing that they were continuing to receive their full wage and benefit and benefit package." Id. at 628.
Cloud took no such step. It tries to avoid the rule of Producers Dairy by arguing that after December 1979 it made no contributions to the Trust Fund's pension accounts, but only to a special segregated account: "Pension contributions ceased and the Trust Fund acted merely as an `escrow'." Plaintiff also contends that the Union was put on notice by the letters of the Trust Fund that employees were not receiving pension benefits; thus, it argues, the policy concerns underlying Producers Dairy do not apply.
Whether the employees may have had notice is irrelevant, however; Producers Dairy establishes a prophylactic rule that makes it impossible for an employer to benefit from any conduct which might mislead employees and cause them to sleep on their rights. Plaintiff's actions fit this description; Cloud could have clarified the situation by ceasing to make contributions, and it had the burden to do so if it wished to avoid any obligation to the Trust Fund.
For the same reasons, it is also irrelevant that the Trust Fund may have established a special account and withheld pension credits pending the receipt of a signed contract. The contributions were purportedly made "for the sole and exclusive benefit" of plaintiff's employees, 29 U.S.C. § 186, at the rates specified in the purported new agreement. Such payments may well have misled employees, no matter what specific arrangements the fund might have made.
Plaintiff is therefore not entitled to recover under § 302.[3] It asserts that it is *1431 entitled to a refund under ERISA's mistake of fact provision as well, 29 U.S.C. § 1103(c)(2)(A)(ii), which provides that the return of contributions to the employer is not prohibited "within six months after the plan administrator determines that the contribution was made by such a mistake." Plaintiff says it mistakenly believed that the Trust Fund had set up a special account and would refund its money.
This claim fails for a number of reasons. First, if the policies of federal labor law preclude plaintiff from recovering under § 302, they preclude a recovery under ERISA. Second, it is doubtful that this section creates a private right of action. Compare Crown Cork & Seal v. Teamsters Pension Fund, 549 F.Supp. 307 (E.D.Pa. 1982) (no right of action) with Teamsters Local 639 v. Cassidy Trucking Co., 646 F.2d 865 (4th Cir.1981). Third, even if it does, the section does not create an entitlement of any kind; it is permissive only, and a refund may be granted or denied for equitable reasons. Cassidy Trucking, supra.[4] Fourth, the argument is circular: in effect, plaintiff maintains that it is entitled to a refund because it thought it was entitled to a refund.
Plaintiff also makes a variety of state law claims against the individual trustees, alleging that an express trust was created or that a constructive trust should be imposed on the contributions it made to the Fund. Cloud thus seeks to accomplish under state law a result that federal labor law prohibits. It nevertheless denies that its claims are preempted, relying on Aitken v. I.P. & G.C.U. Employer Retirement Fund, 604 F.2d 1261 (9th Cir.1979), and Thurber v. Western Conference of Teamsters Pension Trust Fund, 542 F.2d 1106 (9th Cir.1976).
These cases hold only that an employee who cannot recover pension benefits from a trust fund because the fund took contributions from his employer in the absence of a written agreement may sue the fund's administrators. The situation is quite different here: unlike the employee, who is an innocent victim, the employer has the duty to ensure that a written agreement exists and refrain from making contributions except pursuant to such an agreement. If it fails to do these things, it cannot recover its contributions under any theory of state law,[5] for a refund would frustrate the federal policies of § 302.
Viewing the facts bearing on the refund claim in the light most favorable to Cloud, and drawing all inferences in its favor, the Court concludes that as a matter of law, Cloud is precluded from recovering the Trust Fund contributions it made after May 31, 1979. Accordingly, defendants' motion for summary judgment on Cloud's claim must be granted.
IT IS SO ORDERED.
NOTES
[1] Defendants also rely on F.W. Means & Co. v. NLRB, 377 F.2d 683 (7th Cir.1967). That case is irrelevant because it involved only the interpretation of the parties' conduct to determine whether there had been a refusal to bargain in good faith.
[2] While the record in this case reflects considerable argument by the parties over facts, those disputes are not material to the disposition of this motion. The only material facts are those concerning the absence of mutual assent to a writing embodying the terms of an agreement between the parties. The material facts on that point, set forth above, are not disputed.

The dispute between the parties over whether there was an agreement, given those facts, raises only a legal, not a factual issue. It is a dispute over legal consequences flowing from undisputed facts. Summary judgment is therefore appropriate.
The Court notes, moreover, that neither party opposes the other's motion on the ground that there are triable issues of material fact. That objection therefore is waived.
[3] Cloud asserts that it is entitled in any event to recover contributions in excess of the 70 cent rate established in the 1976-79 agreement. In making this claim Cloud relies on the July 20, 1982, letter from the Fund's Contract Supervisor.

Cloud does not maintain that the Supervisor was authorized to bind the Fund or that the Fund is estopped from contradicting her words. It merely reiterates its basic argument that it is entitled to a refund because no § 302 written agreement ever required contributions in excess of 70 cents. This is true but it does not entitle Cloud to a refund.
[4] The court in Cassidy Trucking held that an employer might be able to recover payments made because of a mistaken belief in the existence of a contract obligating him to pay. Cloud's reliance on that case is misplaced; there is no evidence that Cloud believed itself obligated to pay, and on several occasions it vigorously denied any such obligations.

The other cases cited by Cloud in support of its ERISA claim uniformly involve the miscalculation of contribution levels. There is no such equitable reason here for compelling a refund, and even if there were, § 302 would preclude the court from giving effect to it.
[5] The only exception might be an action for fraud alleging that the trustees of a fund misrepresented to the employer that they had signed a contract and that a § 302 written agreement was therefore in existence. An employer so misled could not be expected to take the affirmative steps required by Producers Dairy.

Cloud's complaint includes a cause of action which Cloud describes as "deceit," but it does not allege a misrepresentation of this kind. It alleges in substance only that the trustees misrepresented an intention to create a segregated account. Section 302 precludes Cloud from making contributions in reliance on representations of that sort; the employer must assure himself that there is a written agreement.