774 F.2d 1161
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Central States Southeast and Southwest Areas Pension Fund,
et al., plaintiffs-appellees,
v.
D & K Distributing Co., Defendant-Appellant.
 No. 84-3560
 United States Court of Appeals, Sixth Circuit.
 9/11/85
 
 N.D.Ohio
 VACATED AND REMANDED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: MERRITT and CONTIE, Circuit Judges; and RUBIN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant employer, D & K Distributing Co. (D&K), appeals from a judgment of the district court in favor of plaintiffs Central States Southeast and Southwest Areas Pension Fund and Trustee Howard McDougall in their action against D&K for delinquent contributions to the employee pension fund pursuant to 29 U.S.C. Secs. 1132, 1145. For the reasons that follow, we vacate the judgment of the district court and remand the case for proceedings consistent with this opinion.
 
 I.
 
 2
 On July 22, 1983, Central States and McDougall (hereinafter, Central States) filed a complaint against D&K asserting jurisdiction pursuant to 29 U.S.C. Secs. 185, 1132, 1145 and alleging that D&K was a party to collective bargaining agreements between itself and Teamster locals which represented D&K's employees. Central States alleged that the collective bargaining agreements contained an agreement to make payments to the pension fund, and that D&K had failed to make timely payments. Central States sought unpaid contributions, interest, damages and attorney fees, and sought to enjoin violation of the collective bargaining agreement and trust agreement. Trial was held on May 7, 1984, and the following evidence was received.
 
 
 3
 On April 17, 1967, Teamster Local 348 and D&K Distributing Co., then owned by Stephen Mitchell, entered into a Participation Agreement which included the following relevant terms:
 
 
 4
 1. The Union and the Employer agree to be bound by, and hereby assent to, all of the terms of the Trust Agreement creating said CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, all of the rules and regulations heretofore and hereafter adopted by the Trustees of said Trust Fund pursuant to said Trust Agreement, and all of the actions of the Trustees in administering such Trust Fund in accordance with the Trust Agreement and rules adopted.
 
 
 5
 4. In accordance with the collective bargaining agreement, copy of which is attached hereto, the effective date of participation in the Pension Fund is March 2, 1967.
 
 
 6
 5. The Employer agrees to make contributions as required of all other contributory Employers as follows:
 
 
 7
 The Employer shall contribute to the Central States SOUTHEAST AND SOUTHWEST AREAS PENSION FUND the sum of $4.00 per week for each employee covered by the collective bargaining agreement.
 
 
 8
 The Agreement further stated, 'If the Employer is signed to a Group Contract, give the name of such contract: The Summit County Brewers & Distributors Association.' While D&K was listed on the 1970 and 1973 collective bargaining agreements, there is no indication that D&K signed the agreements. On November 18, 1974, D&K sent an employee verification form to Central States indicating that from 1959 to 1974 D&K's employees were employed under a collective bargaining agreement with a Teamsters local. In an affidavit of service under a collective bargaining agreement, dated October 11, 1974, Local 348 informed the Fund that D&K employee Ronald E. Perry had worked for fifteen years under a collective bargaining agreement negotiated by the union.
 
 
 9
 On November 20, 1980, Samuel Perry applied for survivor pension benefits. On January 31, 1981, D&K informed the Fund that Perry was employed under a collective bargaining agreement with a Teamster's local from 1963 to 1973. Further, on November 20, 1980, the union sent the Fund an affidavit of service under the collective bargaining agreement with respect to Perry.
 
 
 10
 At trial, the Fund presented a collective bargaining agreement between Teamsters Local 348 and the Summit County Brewers & Distributors Association for the period 1974-1977 in which the 'Employer' agreed to contribute to Central States 'for each regular employee covered by this Agreement.' Article XXX of the agreement provided:
 
 
 11
 This Agreement shall . . . continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate this Agreement is served by either party upon the other at least sixty (60) days prior to the annual expiration date of any subsequent year thereafter.
 
 
 12
 The 1977-1980 agreement, like the 1974-1977 agreement, provided as follows with respect to the parties covered by the agreement.
 
 
 13
 This Agreement by and between the Summit County Brewers and Distributors Akron, Party of the First Part and the Teamsters Local Union No. 348, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Party of the Second Part.
 
 
 14
 Two copies of the 1980-1983 agreement were introduced in the district court. The first stated that it was an agreement between Local 348 and the Association and listed the Association members as The Akron Distributing Co., Bonner & Buzzelli Distributing Co., DeLuca Distributing Co., Kohn Beverage Co., Neidert Distributing Co., and Tramonte Distributing Co. The membership was on a cover sheet attached to the agreement which was signed in February 1981. The agreement had provisions similar to the 1977 agreement with respect to pensions and termination. A second copy of the agreement was introduced which listed D&K on its cover sheet, and which apparently was received by the Fund in October 1980. Records show that D&K ceased making pension fund payments in April 1982.
 
 
 15
 The Trust Agreement, as amended December 31, 1974, provided
 
 
 16
 the Union and the Employer have heretofore entered into collective bargaining agreements under the terms of which it is provided that the Employer shall contribute certain agreed-upon sums of money therein set forth to a Pension Fund. . . .
 
 Art. I, Sec. 1 provided:
 
 17
 The term 'Employer' as used herein shall mean any employer who is bound by a collective bargaining agreement with the Union, or any employer not presently a party to such collective bargaining agreement who satisfies the requirements for participation as established by the Trustees and agrees to be bound by this Agreement.
 
 Art. III, Sec. 1 provides:
 
 18
 Each Employer shall make continuing and prompt payments to the Trust Fund as required by the applicable collective bargaining agreement between the parties. The obligation to make such contributions shall continue during periods when the collective bargaining agreement is being negotiated, but such contributions shall not be required in case of strike after contract termination, unless the parties mutually agree otherwise.
 
 
 19
 Art. III, Sec. 5 provides that '[t]he Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. Art. V, Sec. 1 provides:
 
 
 20
 In any controversy, claim, demand, suit at law, or other proceeding between any participant, beneficiary, or any other person and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union or with the Employers, any facts certified to the Trustees by the Union or the Employers, any facts which are of public records, and any other evidence pertinent to the issue involved.
 
 
 21
 The record also shows that as late as February 2, 1982, D&K informed the Fund when it terminated or added an employee. Further, D&K sent copies of its employee actions to Local 348. The parties stipulated that in 1968 Frederick Schindler purchased D&K from Steven Mitchell, and that, in 1982, D&K paid about $4,000 to the Fund for six employees.
 
 
 22
 Frederick Schindler, president of D&K, acknowledged that D&K Corporate minutes indicate that on January 14, 1935, '[t]he board approved the action of its secretary J. C. Kinney in joining the Summit County Beer Association.' Schindler admitted that he determined vacation time for his employees by reference to the 1980 collective bargaining agreement. Schindler indicated that D&K paid benefits to the Fund for its union employees, and also made payments to the Local 348 Health and Welfare Fund.
 
 
 23
 Dan Darrow, Local 348 Secretary-Treasurer and business manager for 15 years, indicated that the union had a contract with D&K because the union had a contract with the Association. Darrow acknowledged that the Union had no signed agreement with D&K or Schindler and that D&K was not involved in negotiation of the 1977 or 1980 contracts. 'We have many companies that participate in the contract and go by the provisions that are not named on the face page of a contract.' 'Many, many of the contracts over the years were never signed by the employers after they were concluded.' Darrow did not recall submitting the 1980 contract to D&K, and wasn't concerned that D&K was not listed on the cover sheet. Darrow testified further that
 
 
 24
 A. I was around in the fifties and there was an Association and negotiations as an Association in the fifties.
 
 
 25
 Q. Well, Mr. Darrow, if you conducted a negotiation with an association--
 
 
 26
 A. Yes, sir.
 
 
 27
 Q. --then a representative of that association would sign the agreement for all the members; correct?
 
 
 28
 A. That hasn't been the practice with this association.
 
 
 29
 William Topel, manager of the Central States contract department, testified that D&K was billed because it was listed on the cover sheet of the collective bargaining agreement sent to Central States. If an agreement expires, Central States continues billing until it is informed of renewal of the agreement or termination. A participation agreement is required only when the employer initially joins the Fund.
 
 
 30
 At the close of plaintiffs' case, Central States amended the complaint to conform to the evidence to allege that D&K was estopped to deny its obligation under the collective bargaining agreement. D&K's objection was overruled.
 
 
 31
 Larry Diebel, vice-president and treasurer of Neidert Distributing, testified that the Association existed to negotiate the 1980 contract and that D&K did not belong to the group. Diebel indicated that the cover sheet listing D&K was not on the contract he signed. Members of the Association contributed to hire an attorney in 1980, but D&K did not contribute. Diebel identified a document which formed the 1980 Association for the purposes of joint negotiation, which document was not signed by D&K. Negotiating on the 1977 contract was done separately and D&K did not participate in the negotiations.
 
 
 32
 Jack Tramonte of Tramonte Distributing corroborated Diebel's testimony and testified that the Association was formed about twenty years ago for broader purposes than negotiating labor agreements. D&K was not involved in the Association after the 1968 ownership change.
 
 
 33
 Schindler testified that he was not a member of the Association, never went to meetings or negotiations and paid no dues or attorney fees. Schindler testified that he never negotiated with Local 348, never signed a contract, and never saw any of the agreements in question. Schindler testified that he never paid wages and benefits in accordance with the collective bargaining agreement, and never signed a participation agreement with Central States. Schindler testified further:
 
 
 34
 Q. Would you explain to the Court the circumstances under which those payments were made into the fund?
 
 
 35
 A. Well, at the time we bought the company, there was certain advice given to us by the former owner on employees that are working for us, due to their pay and due to everything else that we had to do.
 
 
 36
 And there was some union held and there was some non-union help. There was, to be exact, about five union drivers that belonged to a union. And there were certain payments that we was told we had to make as fringe benefits, and throughout the years we just continued making the payments and from time to time you would get advice to employees what's going on.
 
 
 37
 So we kind of kept our company you might say updated with the wages and with economy. And, you know, you can't work a may for a hundred dollars a week forever. You have got to upbuild him the same as other employers upbuild their employees due to inflation.
 
 
 38
 On June 15, 1984, the district court held in favor of Central States, finding that D&K could be held liable under the doctrine of estoppel. Although the court found that D&K was not a signatory to any of the collective bargaining agreements, 'D&K's conduct with respect to the Fund has precisely matched the conduct which would be expected from an employer who considered itself a signatory to the fund.' Accordingly, D&K's conduct estopped it from denying that it was bound by the collective bargaining agreement. On June 29, 1984, the court awarded Central States unpaid contributions, liquidated damages, attorney fees and costs.
 
 II.
 
 39
 Central States brings this action pursuant to 29 U.S.C. Secs. 1132(a), (e), (g), alleging violation of 29 U.S.C. Sec. 1145 which provides:
 
 
 40
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 41
 (emphasis added). The statute provides that employers shall be required to make contributions only 'to the extent not inconsistent with law.' The Supreme Court has recognized that payments illegal under 29 U.S.C. Sec. 186 are an exception to an employer's obligation under Sec. 1145. Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 88 (1982). 29 U.S.C. Sec. 186(a) provides in pertinent part:
 
 
 42
 (a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value--
 
 
 43
 (1) to any representative of any of his employees who are employed in an industry affecting commerce; or
 
 
 44
 (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce.
 
 However, Sec. 186(c)(5) provides that
 
 45
 [t]he provisions of this section shall not be applicable . . . with respect to money or other thing of value paid to a trust fund established by such representative . . . Provided . . .(B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer. . . .
 
 
 46
 (emphasis added). In accordance with this language, D&K's argument is that estoppel cannot supply the written agreement required by Sec. 186(c)(5), and, indeed, many cases suggest as much. See The O'Connor Co. v. Carpenters Union No. 1408, 702 F.2d 824, 825 (9th Cir. 1983); Reiherzer v. Shannon, 581 F.2d 1266, 1267 n.1 (7th Cir. 1978); Moglia v. Geoghegan, 403 F.2d 110 (2d Cir. 1986), cert. denied, 394 U.S. 919 (1969); Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc., 589 F. Supp. 1061, 1072 (M.D. Tenn. 1984); R. V. Cloud Co. v. Western Conference of Teamsters Pension Trust Fund, 566 F. Supp. 1426, 1429 (N.D. Cal. 1983); Carter v. CMTA-Molders & Allied Workers H & W Trust, 563 F. Supp. 244 (N.D. Cal. 1983), aff'd on other grounds, 736 F.2d 1310, 1313 (9th Cir. 1984); Steinmetz Electrical Contractors Ass'n v. Local Union No. 58, IBEW, 517 F. Supp. 428 (E.D. Mich. 1981); Nedd v. United Mine Workers of America, 506 F. Supp. 891, 899 (M.D. Pa. 1980), aff'd, 726 F.2d 972 (3d Cir. 1984). See also Kaiser Steel, 455 U.S. at 89 n.13 ('We are unpersuaded that Congress intended to give pension fund trustees the benefit of illegal bargains that were not, and should not have been, relied upon to ensure the solvency of the trust fund.'). But see Lewis v. Lowry, 295 F.2d 197, 199-200 (4th Cir. 1961), cert. denied, 368 U.S. 977 (1962).
 
 
 47
 The district court did not hold that D&K was bound by the collective bargaining agreement because it was a member of the association that negotiated the agreement, Rabouin v. NLRB, 195 F.2d 906, 910 (2d Cir. 1952); Lewis v. Cable, 107 F. Supp. 196 (W.D. Pa. 1952), nor that D&K was bound by the terms of the agreement because pension contributions were a subject on which D&K had a mandatory duty to bargain, Hinson v. NLRB, 428 F.2d 133, 137 (8th Cir. 1970); Seafood Workers Health Fund v. Seafood Workers Health and Fund Mgt. Trustees, 571 F. Supp. 483, 485-87 (D. Mass. 1983); Trustees of the Colorado Pipe Ind. Ins. Fund v. LPCC, Inc., 549 F. Supp. 833 (D. Colo. 1982); Central States Southeast and Southwest Areas Pension Fund v. Hitchings Trucking, Inc., 472 F. Supp. 1243 (E.D. Mich. 1979). The district court's holding rests solely on the estoppel doctrine, and there is no evidence that the district court considered whether 29 U.S.C. Sec. 186 barred recovery of the allegedly delinquent contributions under 29 U.S.C. Sec. 1145. We remand the case to the district court to consider whether 29 U.S.C. Sec. 186 bars recovery in this case.[1]
 
 
 48
 Accordingly, we VACATE the judgment of the district court and REMAND the case for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Carl B. Rubin, Chief United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 In light of the district court's apparent failure to consider the effect of 29 U.S.C. Sec. 186 on plaintiffs' right of recovery, we express no opinion on whether estoppel is a viable theory on which plaintiffs might recover. We note, however, that to prevail on an estoppel theory; plaintiffs would be required to prove representations by D&K that it was bound by the collective bargaining agreement and that the Fund had a right to rely on such representations. Heckler v. Community Health Services of Crawford County, Inc., 104 S. Ct. 2218, 2223 (1984); Hass v. Darigold Dairy Products Co., 751 F.2d 1096, 1099-100 (9th Cir. 1985); Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 319 (6th Cir. 1984), cert. denied, 105 S. Ct. 2024 (1985)
 The Ninth Circuit has suggested that 'an adoption by conduct theory does not appear to violate the language or purpose of LMRA Sec. 302(c)(5)(B).' Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co., 753 F.2d 1512, 1520 n.13 (9th Cir. 1985).
 [T]he Employer's adoption by its conduct of the terms of written collective bargaining agreements . . . may well satisfy the requirements of Sec. 302(c)(5), particularly where there is an immediately preceding written agreement between the parties that clearly, though prospectively, refers to those agreements.
 Id. We note that no such preceding written agreement referring to the 1980 collective bargaining agreement exists in this case and that there was evidence produced at trial which indicates that D&K did not comply with several terms of the collective bargaining agreement by conducting Saturday sales and not following the agreement's curfew rules.