753 F.2d 1512
 118 L.R.R.M. (BNA) 3391, 40 Fed.R.Serv.2d 1433,
102 Lab.Cas. P 11,388, 103 Lab.Cas. P 11,639,
6 Employee Benefits Ca 1453
 ARIZONA LABORERS, TEAMSTERS AND CEMENT MASONS LOCAL 395
HEALTH AND WELFARE TRUST FUND, a trust, et al.,
Plaintiffs/Counterdefendants/Appellants,
v.
CONQUER CARTAGE COMPANY, an Arizona corporation,
Defendant/Counterclaimant/Appellee.
ARIZONA LABORERS, TEAMSTERS AND CEMENT MASONS LOCAL 395
HEALTH AND WELFARE TRUST FUND, a trust, et al.,
Plaintiffs/Counterdefendants/Appellees,
v.
CONQUER CARTAGE COMPANY, an Arizona corporation,
Defendant/Counterclaimant/Appellant.
 Nos. 83-2072, 83-2094.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 14, 1984.
Decided Feb. 22, 1985.
 
 Gerald Barrett, David L. Niederdeppe, Ward & Keenan, Ltd., Phoenix, Ariz., for Arizona Laborers, etc.
 John R. Tellier, Phil B. Hammond, Evans, Hammond & Milliken, Phoenix, Ariz., for Conquer Cartage Co.
 Appeal from the United States District Court for the District of Arizona (Phoenix).
 Before CHOY, PREGERSON, and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Representatives of various joint labor-management trust funds filed claims based on section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185 (1982), and section 515 of the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1145 (1982), to enforce the provisions of a collective bargaining agreement requiring trust fund contributions by the employer. The defendant employer filed a counterclaim contending that its obligation to contribute to the trust funds had ended a number of years earlier when, according to the employer, the agreement between the two parties to this dispute expired. The disputed agreement incorporated by reference a series of master agreements between various contractor associations and the unions. The district court concluded that the employer was not obligated to make the contributions and granted summary judgment for the employer on the plaintiffs' claims. We hold that the district court erred.
 
 I. FACTS
 
 2
 The facts are not in dispute. The plaintiffs (hereinafter the "Trust Funds") represent joint labor-management trust funds established in accordance with section 302 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 186 (1982). Each of the trust funds is a multi-employer plan as defined by section 4 of the Employer Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1003. The defendant employer, Conquer Cartage Company, (hereinafter the "Employer") is an Arizona corporation engaged in the construction business.
 
 
 3
 The Arizona Master Labor Agreements are a series of collective bargaining agreements entered into by several construction contractor associations and several labor unions, including a local of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (hereinafter the "Teamsters"). Contributions to Teamster trust funds are in dispute here. The Master Labor Agreements, which date back to at least 1965, have traditionally established the prevailing wage rates for covered employees, as well as the rates at which the contractors are required to contribute to trust funds that finance fringe benefits.
 
 
 4
 The 1965 Master Labor Agreement terminated on May 31, 1970. A successor agreement went into effect on June 1, 1970 and expired on June 1, 1973. On that date, a Master Labor Agreement covering the period from 1973 to 1976 went into effect. That Agreement set May 31, 1976 as the date of expiration. As of that date, the unions and the various contractor associations were negotiating, but had not yet arrived at a new agreement. On June 2, 1976, the unions began to engage in strike activity. The unions and the contractor associations subsequently reached an agreement that became effective on July 9, 1976, and terminated on May 31, 1979. A new Agreement came into effect on June 1, 1979, and, by its terms, expired on May 31, 1982.
 
 
 5
 In 1965, the Employer, although not a member of any of the contractor associations that negotiated the Master Labor Agreements, executed a Memorandum Agreement that incorporated the 1965-70 Arizona Master Labor Agreement and all of its successor agreements.[1] A memorandum agreement of this nature is commonly referred to by labor and management representatives as a "me-too agreement." Under the Master Labor Agreements, contributions to various trust funds were required in order to provide fringe benefits to eligible employees.[2] The Employer contributed to the trust funds and honored all other provisions of the 1965-70, 1970-73, 1973-76, 1976-79, and 1979-82 Master Labor Agreements. However, when in 1981 the Trust Funds requested a payroll audit to ensure that the Employer was contributing the required amounts to the trust funds, the Employer took the position that, by its terms, the Memorandum Agreement had expired in 1976; on that basis, the Employer contended that it was not then, and had not for the preceding five years been, required to contribute to the Trust Funds.
 
 
 6
 The Trust Funds filed this action to enforce the Memorandum Agreement's provisions requiring the Employer to make trust fund contributions. Alleging that the contributions made during the six-month period immediately prior to the filing of its counterclaim were made only because of a "mistake of fact" regarding the continued existence of the Memorandum Agreement, the Employer filed a counterclaim based on 29 U.S.C. Secs. 1103(c)(2)(A) & 1132, seeking recovery of those particular contributions.[3]
 
 
 7
 The Trust Funds and the Employer filed cross motions for summary judgment. In support of its motion, the Trust Funds contended that section 8(d) of the National Labor Relations Act requires the Employer to give 60 days' notice of its intent to terminate the agreement and, because the Employer failed to give the requisite notice at any time prior to the filing of the counterclaim, the Memorandum Agreement remained in effect at least until then.[4] The Employer argued that it was entitled to summary judgment on the ground that a termination provision contained in one section of the Memorandum Agreement was triggered in 1976 by the one month gap between the expiration date of the 1973-76 Master Labor Agreement and the date that the 1976-79 Agreement went into effect. Accordingly, it contended, the "me-too agreement" terminated at that time.
 
 
 8
 The district court first ruled that it was without jurisdiction to consider the Trustee's statutory argument and then, citing the section of the agreement relied upon by the Employer, held that the Memorandum Agreement terminated in 1976. It therefore denied the Trust Funds' motion and granted summary judgment for the Employer.[5] The Trust Funds appeal the latter order.
 
 II. STANDARD OF REVIEW
 
 9
 In reviewing a district court's order granting summary judgment, we must view the evidence, and make all inferences from that evidence, in the light most favorable to the party against whom summary judgment was granted. See, e.g., Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1328-29 (9th Cir.1983). In that light, we must determine whether there is any genuine issue of material fact in dispute and whether the moving party is entitled to judgment as a matter of law. See M/V American Queen v. San Diego Marine Construction Corp., 708 F.2d 1483, 1487 (9th Cir.1983). We have emphasized that "[w]here a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed, which is an issue for the trier of fact." Laborers Health & Welfare Trust Fund v. Kaufman & Broad, 707 F.2d 412, 418 (9th Cir.1983) (citations omitted).
 
 
 10
 III. THE "TERMINATION" OF THE MEMORANDUM AGREEMENT
 
 
 11
 A. The National Labor Relations Act as a Bar to Termination of the Memorandum Agreement.
 
 
 12
 Section 8(d)(1) of the National Labor Relations Act (NLRA), 29 U.S.C. Sec. 158(d)(1), requires a party seeking to terminate or modify a collective bargaining agreement toserve a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification.
 
 
 13
 The Trust Funds contend that, because the employer failed to give the requisite 60-day notice under section 8(d)(1), the Memorandum Agreement could not have lawfully terminated in 1976, and thus it remained in effect. Because this argument is based entirely on the allegation that the employer committed an unfair labor practice under the NLRA, we lack jurisdiction to address its merits.
 
 
 14
 In Cement Masons Health & Welfare Trust Fund for Northern California v. Kirkwood-Bly, Inc., 520 F.Supp. 942 (N.D.Cal.1981), affirmed for reasons stated in district court's opinion, 692 F.2d 641 (9th Cir.1982), the district court considered a jurisdictional question similar to the one before us: whether a federal court had jurisdiction over a claim for recovery of delinquent trust fund contributions based on section 8(a)(5) of the NLRA, 29 U.S.C. Sec. 158(a)(5). In Cement Masons, the representatives of several trust funds claimed that the employer violated section 8(a)(5) by unilaterally changing the terms and conditions of employment after expiration of the collective bargaining agreement and during negotiations for a new one. Given the violation of section 8(a)(5), the representatives of the trust funds argued that the employer should be able to recover the delinquent contributions. 520 F.Supp. at 944.
 
 
 15
 The district court based its decision on San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), in which the Supreme Court held that "[w]hen an activity is arguably the subject of Sec. 7 or Sec. 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." 359 U.S. at 245, 79 S.Ct. at 780; see Waggonner v. R. McGray, Inc., 607 F.2d 1229, 1233-36 (9th Cir.1979). After concluding that the trust funds' claim for recovery of the contributions rested on an alleged violation of section 8(a)(5) of the NLRA, 520 F.Supp. at 944, the district court held that under Garmon it did not have jurisdiction to resolve the claim,[6] see, e.g., George Day Construction Co. v. United Brotherhood of Carpenters & Joiners, 722 F.2d 1471, 1480-81 (9th Cir.1984); Glaziers & Glassworkers Local Union # 767 v. Custom Auto Glass Distributors, 689 F.2d 1339, 1342-45 (9th Cir.1982).
 
 
 16
 The Trust Funds' argument basically is that because the Employer did not comply with section 8(d)(1), the Memorandum Agreement could not be terminated. Because that argument is not based on the contract itself but solely on the violation of section 8(d)(1), the case falls squarely within the rule of Cement Masons.[7] Accordingly, we hold that the district court was correct in holding that it lacked jurisdiction to address the Trust Fund's statutory argument.[8]
 
 
 17
 B. Reconciling the Two Termination Provisions in the Memorandum Agreement.
 
 
 18
 The district court next proceeded to consider the parties' contract interpretation arguments. The Trust Funds suggest that section 2 of the Memorandum Agreement is controlling and that by virtue of its terms the Agreement remained in force despite the strike in 1976. Section 2 is a termination clause common to many collective bargaining agreements and provides that:
 
 
 19
 Unless the employer gives the unions written notice at least thirty (30) days prior to the expiration or termination of said agreement indicating to the contrary, the Employer agrees to be bound by the terms of the succeeding collective bargaining agreement, including all amendments, extensions and renewals thereof, next negotiated between the associations and the unions. This same provision shall likewise apply thereafter whenever one agreement is expiring and another successive agreement is negotiated. All such successive agreements and their amendments, extensions and renewals will be deemed to be incorporated herein by reference at such time as they are negotiated and become effective by their terms.
 
 
 20
 The Employer bases its argument that the Memorandum Agreement terminated in 1976 on section 3(b) of that agreement. Section 3 provides that:
 
 
 21
 This Memorandum Agreement will automatically terminate as follows:
 
 
 22
 a. Upon the expiration or termination date of the association agreement then in effect if the employer gives the (30) day notice referred to in section 2 above; or
 
 
 23
 b. Upon the expiration or termination date of the association agreement, or any extension thereof, when another successive agreement has not yet been negotiated so as to immediately come into effect. (emphasis added).
 
 
 24
 According to the Employer, the short gap in time between the expiration of the 1973-76 Master Labor Agreement and the effective date of the 1976-79 Master Labor Agreement, during which period the union was on strike, served to terminate the "me-too agreement" for all time.
 
 
 25
 When the operation of an ordinary contract is not clear from its language, a court generally may consider extrinsic evidence to determine the intent of the parties in including that language. See generally 3 Corbin on Contracts Sec. 536, at 27-28 (1960). That principle is applied with even greater liberality in the case of a collective bargaining agreement. In ascertaining the intent of the parties to a collective bargaining agreement, "the trier of fact may look to the circumstances surrounding the contract's execution, including the preceding negotiations.... It may also consider the parties' conduct subsequent to contract formation ... and such conduct is to be given great weight." Laborers Health & Welfare Trust Fund v. Kaufman & Broad, 707 F.2d at 418 (citations omitted; emphasis added). A district court should also "consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." Kemmis v. McGoldrick, 706 F.2d 993, 996 (9th Cir.1983) (citing Transportation-Communication Employees Union v. Union Pacific Railroad Co., 385 U.S. 157, 160-61, 87 S.Ct. 369, 371-72, 17 L.Ed.2d 264 (1966)); see Hendricks v. Airline Pilots Association International, 696 F.2d 673, 676 (9th Cir.1983). As we have emphasized, when an agreement's meaning is not clear on its face and contrary inferences as to intent are possible, there exists an issue of material fact for which summary judgment is ordinarily inappropriate. Laborers Health & Welfare Trust Fund v. Kaufman & Broad, 707 F.2d 412, 418 (9th Cir.1983); see Bower v. Bunker Hill Co., 725 F.2d 1221, 1223 (9th Cir.1984); Schwarzer,Summary Judgment under the Federal Rules, 99 F.R.D. 465, 474 (1984).[9]
 
 
 26
 Here, the meaning of the Memorandum Agreement is not clear on its face; the language of the two termination provisions appears to be inconsistent; the interrelationship and ultimate effect of those provisions is not plainly conveyed by the contractual language. Despite the ambiguity created by the existence of the two conflicting provisions, the district court concluded solely on the basis of the language of section 3(b) of the Memorandum Agreement that the agreement terminated pursuant to its terms. It did so without adequately considering the more conventional termination provision in section 2 of the agreement or attempting to reconcile the two apparently conflicting provisions. Most importantly, it did so without the benefit of any evidence as to the intent of the parties in including the two provisions in the agreement.
 
 
 27
 There must, of course, be a rational method of reconciling two apparently conflicting provisions before a court can be required to give meaning to both. Otherwise, the court will have to choose between the two. On summary judgment the first question is: viewing the evidence in the light most favorable to, and making all inferences in favor of, the non-moving party, is it possible to reconcile the two provisions in a manner consistent with that party's claim?[10] If so, the motion must be denied; if not, we continue the inquiry. Here, there is at least one way of reconciling the termination provisions in a manner consistent with the Trust Funds' claim.
 
 
 28
 Preliminarily, we should note that the basic purpose of a "me-too agreement" is to allow independent, usually smaller, employers to obtain all the benefits of the master collective bargaining agreement that is negotiated by the principal employers in the industry without having to participate in the industry negotiations, or to engage in separate negotiations, every few years. Thus, the independent employer is assured that (1) it will not be subject to a contract containing more onerous conditions than are applicable to its competitors, (2) it will obtain whatever protections or advantages the industry collective bargaining agreement provides other employers, (3) it will be saved the cost of expensive negotiations, and most pertinent here, (4) it will be covered by an agreement whenever the rest of the industry is covered and not subject to an agreement whenever the rest of the industry is not. "Me-too agreements" generally contain a termination clause which allows the independent employer to terminate its agreement whenever a master labor agreement is about to expire, by giving thirty days notice of its desire to do so. This provision is similar to the termination provision contained in the general run of collective bargaining agreements.[11]
 
 
 29
 Read in light of the purposes underlying "me-too agreements," section 3(b) of the Memorandum Agreement is susceptible to the construction that while that agreement is rendered without force or effect during a strike, it is automatically revived if a successor Master Labor Agreement is reached. More simply, section 3(b) can be read as permanently terminating the Memorandum Agreement if no successor agreement is subsequently entered into, but only temporarily terminating the agreement if one is. Such a construction would be consistent with section 2 which provides for the automatic application of all successor Master Labor Agreements unless the Employer gives a 30-day termination notice. Thus, the two apparently conflicting sections of the agreement can be reconciled by construing them, together, as providing the following: where no thirty day termination notice is given, the Memorandum Agreement is revived when a new Master Labor Agreement goes into effect. Such a construction of the two provisions would be wholly consistent with the basic purpose of "me-too agreements." It would protect the Employer by ensuring that it will not be subject to the terms of the Memorandum Agreement if a new Master Labor Agreement is not reached. It would also fully preserve the Employer's right to terminate the entire me-too agreement at its expiration date, and thus exclude itself from the coverage of the successor Master Labor Agreement: all the Employer need do is give the contractually required 30-days notice.
 
 
 30
 It is not only the language of the two contractual provisions that causes us to conclude that the Memorandum Agreement is susceptible to a construction that would entitle the Trust Funds to relief. In resolving the question of the parties' intent, district courts give "great weight" to "the parties' conduct subsequent to contract formation." Laborers Health & Welfare Trust Fund v. Kaufman & Broad, 707 F.2d at 418. The reconciliation of the two termination provisions in the manner described above would be fully consistent with the parties' conduct subsequent to the time that the 1976-79 Master Labor Agreement came into effect. In fact, that conduct appears strongly to support the conclusion that the "me-too agreement" remained in effect after the strike. From 1965 until the day that the Trust Funds requested a payroll audit in 1981, see supra p. 4, the Employer honored the provisions of the Memorandum Agreement and the incorporated Arizona Master Labor Agreements. At all relevant times, the Employer paid the employees according to the wage scale provided for in the Arizona Master Labor Agreements. As authorized by those Agreements, the Employer regularly used the Teamsters Local 83 hiring hall. Most significantly, until the audit was requested, the Employer voluntarily contributed to the various Trust Funds on behalf of its employees at the rates provided for in the Arizona Master Labor Agreements.
 
 
 31
 Not until 1981 did the employer take the position that the Memorandum Agreement had terminated in 1976. Only then did the Employer allege that any portion of the trust fund contributions were paid as a result of a "mistake of fact," and contend that they should be refunded. Given its consistent adherence to the terms of the Agreement, the record strongly suggests that the employer never doubted its obligations under the Memorandum Agreement, and, in fact, believed, at least until the audit request was made, that it was fully bound by the terms of the Memorandum Agreement. Such a belief is certainly of significant probative value in ascertaining the parties' intent.
 
 
 32
 Of course, there may be other plausible explanations for, or methods of reconciling, the two contract provisions. That is for the district court to decide by carefully scrutinizing the intent of the parties after all the facts are before it.[12] However, the district court should be guided by the principle that "technical rules of contract formation do not confine collective bargaining because the parties are obliged by their relationship to deal exclusively with each other and because policies of the [NLRA] dictate that this process not be encumbered by undue formalities." Presto Casting Co. v. NLRB, 708 F.2d 495, 497-98 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983). Thus, the district court should not give undue weight to the literal language of section 3 of the Memorandum Agreement regardless of how that provision might be interpreted were this an ordinary contract action.
 
 
 33
 After considering all the relevant facts, the district court will be in a position to determine the intent of the parties in including the two termination provisions in the Memorandum Agreement. At the time it made its summary judgment ruling, it did not have all the necessary information before it, and the information it did have was not such as would support an award in favor of the Employer.[13]IV. JOINDER OF THE EMPLOYEES ON WHOSE BEHALF THE
 
 
 34
 EMPLOYER MADE THE CONTRIBUTIONS AS "NECESSARY" PARTIES
 
 
 35
 The Trust Funds moved to dismiss the counterclaim for failure to join employees on whose behalf the Employer made the trust fund contributions. The district court denied the motion. The Trust Funds contend that the district court abused its discretion in failing to join the employees as necessary parties under Federal Rule of Civil Procedure Rule 19.[14] We disagree.
 
 
 36
 "[W]e apply an abuse of discretion standard of review to the district court's decision concerning joinder of parties under Rule 19." United Food & Commercial Workers v. Alpha Beta Co., 736 F.2d 1371, 1381 (9th Cir.1984) (citing Bakia v. County of Los Angeles, 687 F.2d 299, 301 (9th Cir.1982) (per curiam)). Here, the plaintiffs representing the Trust Funds are fiduciaries and thus required to act in the best interests of the employee beneficiaries of the funds. See 29 U.S.C. Sec. 1104 (1982). It has long been the rule that beneficiaries of a trust ordinarily need not be joined as necessary parties under Rule 19. See Sadler v. Sadler, 167 F.2d 1, 2 (9th Cir.1948); C. Wright & A. Miller, Federal Practice & Procedure: Civil Sec. 1618, at 182-93 (1972); see also Walsh v. Centeio, 692 F.2d 1239, 1244 & n. 6. (9th Cir.1982) (distinguishing Sadler but conceding that "the weight of authority is probably against dismissal for nonjoinder of all trust beneficiaries."). We see no need to deviate from that rule here.
 
 
 37
 We are unable to understand how, given the fiduciary duty owed by the Trust Funds to the employees, the failure to join the employees "will 'as a practical matter' at all impair, or even affect, their ability to protect those interests." United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d at 1381.[15] Moreover, because complete relief can be accorded on the counterclaim without joinder of the employees, the district court was not compelled to require joinder under Rule 19.
 
 
 38
 We therefore hold that the district court acted well within its discretion in denying the Trust Funds' motion to dismiss the counterclaim on the ground that affected employees were not joined under Rule 19. Accordingly, we affirm the district court's holding on that issue.
 
 V. CONCLUSION
 
 39
 We hold that the district court erred in granting summary judgment for the Employer. We affirm the district court's ruling that the employees on whose behalf the contributions were made are not necessary parties.
 
 
 40
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 Section 1 of the Memorandum Agreement states that "[t]he parties hereto agree to comply and be bound by all of the terms of [the 1965-70 Master Labor Agreement between the contractor associations and the unions] including all amendments, extensions and renewals thereof, which agreements, amendments, extensions and renewals are incorporated, or will be deemed to be incorporated, herein as if set forth expressly."
 
 
 [2]
 Under Articles 19-22 of the 1979-82 Arizona Master Labor Agreement the Employer was required to contribute to trust funds providing health and welfare benefits, pension benefits, a savings plan, and an apprenticeship and training program to covered employees. Similar provisions were included in the 1976-1979 Master Labor Agreement
 
 
 [3]
 In an attempt to avoid potential delinquency assessments, the Employer continued to make contributions to the trust funds after filing the counterclaim. The Employer also seeks recovery of those contributions
 
 
 [4]
 The Trust Funds also argue that, by honoring the terms of these Agreements, the Employer effectively "adopted" the terms of the 1976-79 and 1979-82 Master Labor Agreements and therefore is bound by their terms. See infra note 13
 
 
 [5]
 The district court also denied the Employer's counterclaim for a refund of the contributions that were paid prior to the filing of the counterclaim, but held that the Employer was entitled to a refund of the contributions paid after that time. The Employer's request for attorney's fees was denied
 
 
 [6]
 Although the district court in Cement Masons held that it did not have jurisdiction over what was in effect an unfair labor practice claim, it emphasized that
 it is well-established in this circuit that, after the expiration of a collective bargaining agreement and during negotiations for a new one, the employer is required to continue trust fund contributions ... since 29 U.S.C. section 158(a)(5) makes it an unfair labor practice for the employer to unilater-ally change terms and conditions of employment following the expiration date of the agreement.
 
 
 [520]
 F.Supp. at 944 (citing Peerless Roofing Co. v. NLRB, 641 F.2d 734 (9th Cir.1981))
 
 
 [7]
 The Supreme Court's decision in Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), was issued after the district court's decision in Cement Masons. In Kaiser Steel, the Court held that, in an action brought under Sec. 301 of the LMRA to enforce a clause of a collective bargaining agreement, the district court erred in not adjudicating a defense that the clause violated section 8(e) of the NLRA, 29 U.S.C. Sec. 1132. In so holding, the Court emphasized that, "[a]s a general rule, federal courts do not have jurisdiction over activity which 'is arguably subject to Sec. 7 or Sec. 8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.' " Kaiser Steel, 455 U.S. at 83, 102 S.Ct. at 859 (quoting San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959); citing Garner v. Teamsters, 346 U.S. 485, 490-91, 74 S.Ct. 161, 165-66, 98 L.Ed. 228 (1953)). However, the Court stated that "[w]hile only the Board may provide affirmative remedies for unfair labor practices, a court may not enforce a contract provision which violates Sec. 8(e)." Kaiser Steel, 455 U.S. at 86, 102 S.Ct. at 861
 After the Supreme Court's decision in Kaiser Steel, we reaffirmed the rule set forth in Cement Masons. In George Day Construction Co. v. United Brotherhood of Carpenters & Joiners, 722 F.2d 1471, 1481 (9th Cir.1984), we discussed Cement Masons and, although distinguishing it from the case before us, approved the holding that a section 301 claim is preempted under the doctrine of primary jurisdiction when it "was dependent entirely" upon an unfair labor practice charge.
 The case before us is clearly distinguishable from Kaiser Steel. Here, the defendant does not allege that enforcement of any clause of the collective bargaining agreement would violate the NLRA. Rather, the plaintiffs are attempting to obtain an affirmative remedy; because the employer committed an unfair labor practice they seek to enforce a collective bargaining agreement that, for purposes of this argument, we assume would otherwise have expired. As we have stated, the Trust Fund's argument falls squarely within the rule of Cement Masons.
 
 
 [8]
 Of course, we recognize that "failure to comply with the sixty-day notice provision of section 8(d)(1) ... constitutes an unfair labor practice." R. Gorman, Basic Text on Labor Law 427 (1976); see A. Cox, D. Bok, & R. Gorman, Labor Law, at 534 (1977). However, that would be a matter for the National Labor Relations Board, not the courts, to address
 
 
 [9]
 Contrary inferences are not possible where undisputed and conclusive evidence as to the intent of the parties is before the court. The type of evidence frequently utilized to show intent, such as the bargaining history between the parties, could in some instances be so clear and unambiguous as to preclude contrary inferences as to the parties' intent. In those instances, summary judgment would be appropriate
 
 
 [10]
 The first choice, when construing a contract is, of course, to give effect to all of its provisions. Only when that is impossible, should a court choose to apply one clause and ignore another
 
 
 [11]
 Where the thirty day notice is not given, agreements between employers and unions generally provide that they are automatically renewed and continue in effect beyond the expiration date. In the case of the ordinary agreement, renewal is usually on a year to year basis. In the case of the me-too agreement, renewal is usually for the term of the next succeeding master labor agreement
 
 
 [12]
 For example, it is possible that the parties were negotiating about which of the termination sections would be included in the agreement, and agreed to include only one of the two, but inadvertently included both in the final draft. Only an inquiry into the intent of the parties could reveal whether such a mistake was made
 
 
 [13]
 In view of our holding, we need not reach the issue whether the employer "adopted" the terms of the 1976-79 and 1979-82 Master Labor Agreements. We recognize, however, that a strong argument can be made that the employer, by honoring the terms of the two agreements until 1981, did, in fact, adopt the two agreements
 Without more, an adoption by conduct theory does not appear to violate the language or purpose of LMRA Sec. 302(c)(5)(B), 29 U.S.C. Sec. 186(c)(5)(B) (1982). That section bars contributions to a trust fund unless they are based upon some written agreement signed by the employer and union. See Producers Dairy Delivery Co. v. Western Conference of Teamsters Pension Trust Fund, 654 F.2d 625, 627 (9th Cir.1981) ("The purpose of section 302's [requirement that contributions be made pursuant to a written agreement] is to 'prevent employers from tampering with the loyalty of union officials, and to prevent union officials from exerting tribute from employers.' "; quoting Alvares v. Erickson, 514 F.2d 156, 164 (9th Cir.), cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975)). We recently emphasized that "[t]he statutory language requires only that 'the detailed basis on which such payments are to be made is specified in a written agreement.' " Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1263 (9th Cir.1984) (quoting Sec. 302(c)(5)). Accordingly, "[c]ases interpreting this language have not insisted upon an explicit incorporation of the trust agreements by the collective bargaining agreement; they have only required some clear reference to the trust agreement." Paddack, 745 F.2d at 1263 (emphasis added) (citing Alvares v. Erickson, 514 F.2d 156, 161 (9th Cir.), cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); Hinson v. NLRB, 428 F.2d 133, 139 (8th Cir.1970)). In Paddack, we held that the written collective bargaining agreement, which specified that the employer would make trust fund contributions according to the terms of a master trust agreement, satisfied the requirements of Sec. 302(c)(5). 745 F.2d at 1263. In so holding, we said "[i]t is clear that the parties in entering written collective bargaining agreements intended to be bound by the terms of the trust agreements. Further evidence of this intent is provided by the Employer's conduct. Between 1971 and 1979, the Employer submitted monthly remittance reports to the Trust Funds covering [the] employees." Id. at 1263-64 (emphasis added).
 Thus, as the Trust Funds contend, the Employer's adoption by its conduct of the terms of written collective bargaining agreements (the 1976-79 and 1979-82 Master Labor Agreements) may well satisfy the requirements of Sec. 302(c)(5), particularly where there is an immediately preceding written agreement between the parties that clearly, though prospectively, refers to those agreements. Cf. Producers Dairy Delivery Co. v. Western Conference of Teamsters Pension Trust Fund, 654 F.2d 625, 628 (9th Cir.1981) (holding that an employer must continue to make contributions under a written agreement that had expired during collective bargaining negotiations); Peerless Roofing Co. v. NLRB, 641 F.2d 734, 736 (9th Cir.1981) (holding that the requirements of Sec. 302(c)(5) were satisfied when contributions were made pursuant to expired collective bargaining agreements). We recognize that this is not a situation in which "adoption" of the agreement would compel an illegal act; of course, under those circumstances, an adoption theory would be rejected. Cf. Thurber v. Western Conference of Teamsters Pension Plan, 542 F.2d 1106, 1109 (9th Cir.1976) (per curiam) (holding that doctrine of estoppel may not be invoked to compel an act that would not be in compliance with Sec. 302(c)(5)(B)).
 The National Labor Relations Board has subscribed to a form of the adoption theory. Vin James Plastering Co., 226 NLRB 125, 130 (1976) (ruling that the employer was bound by a collective bargaining agreement because it had "engaged in a course of conduct which manifested an intention to adopt and be bound by [it]"). We have not yet had the opportunity, and find it unnecessary and inappropriate here, to rule upon the validity of the adoption theory. We recognize that a few decisions from other circuits might be read as rejecting an adoption theory. See, e.g., Bricklayers, Masons & Plasterers Int'l Union v. Stuart Plastering Co., 512 F.2d 1017, 1029 (5th Cir.1975); Moglia v. Geoghegan, 403 F.2d 110, 118 (2d Cir.1968), cert. denied, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969). Although we need not address those decisions here, we note that they appear to be readily distinguishable.
 
 
 [14]
 Fed.R.Civ.P. 19(a) provides, in relevant part, that:
 A person ... shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.
 
 
 [15]
 In addition, if the Trust Funds failed to act in the best interests of affected employees, those employees could bring an action to recover damages against the Trust Funds for breach of fiduciary duty. See 29 U.S.C. Sec. 1109 (1982)