**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, LOCAL 47, Plaintiff–Appellant,**

v.

**SOUTHERN CALIFORNIA EDISON COMPANY, Defendant–Appellee.**

**No. 88–6075.**

United States Court of Appeals, Ninth Circuit.

Submitted April 3, 1989.[*]

Decided by Memorandum April 13, 1989.

Order and Opinion July 18, 1989.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Paul Crost, Reich, Adell & Crost, Orange, California and Anthony R. Segall, Reich, Adell & Crost, Los Angeles, Cal., for plaintiff-appellant.

Gordon E. Krischer, Robert N. Eccles, Kenneth E. Johnson, O'Melveny & Myers, Los Angeles, Cal., for defendant-appellee.

Before WRIGHT, FARRIS and NELSON, Circuit Judges.

NELSON, Circuit Judge:

I. *Overview*

Appellant is a labor organization that represents a unit of Southern California Edison Company ("Edison") employees. Appellant sued Edison for breach of contract, seeking to recover benefits wrongfully withheld under a health care plan negotiated by the parties and administered by appellee. The district court granted summary judgment for the defendant on the grounds that the contract explicitly permitted Edison to withhold the benefits as it did, and that the district court must defer to Edison's interpretation of the contract unless that interpretation was arbitrary and capricious. We reverse and remand. The court should not defer to Edison's interpretation of the contract. The contract is ambiguous on its face and appellant's reading of the contract is reasonable, precluding summary judgment.

II. *Factual and Procedural Background*

In 1968, Edison and Local 47 negotiated the creation of the medical benefits plan at issue in this case as part of a collective bargaining agreement. The plan provides for medical benefits to dependents of Edison employees. The parties periodically have negotiated amendments to the plan, most recently in 1983 and 1986. In the 1983 contract negotiations, Edison proposed but failed to secure a limit on benefits payable under the plan in the form of a schedule of "reasonable and customary" charges for certain medical procedures. Nevertheless, in 1984 Edison began to disallow dependent claims to the extent that they exceeded the amounts specified in Edison's schedule of reasonable and customary charges. Local 47 discovered the practice in 1987 and protested. In response, Edison suspended its use of the schedule. Local 47 sued Edison in federal court for breach of contract, seeking payment of the benefits withheld under the schedule. The district court granted summary judgment to the defendant on two grounds: 1) the collective bargaining agreement expressly authorized Edison to limit benefits to reasonable and customary charges; and 2) even if the contract were ambiguous, Edison's interpretation must be upheld because it was not arbitrary or capricious.

ᵀII. *Standard of Review*

We review the district court's grant of summary judgment *de novo.* *See Pope v. Savings Bank of Puget Sound,* 850 F.2d 1345, 1356–57 (9th Cir.1988).

In reviewing a district court's grant of summary judgment, we must view the evidence, and make all inferences from that evidence, in the light most favorable to the non-moving party. *See Twentieth Century-Fox Film Corp. v. MCA, Inc.,* 715 F.2d

1327, 1328–29 (9th Cir.1983). We must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *See M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1487 (9th Cir.1983); Fed.R.Civ.P. 56(c). "We have emphasized that '[w]here a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed, which is an issue for the trier of fact.'" *Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1515 (9th Cir.1985) [hereinafter *Arizona Laborers*] (quoting *Laborers Health & Welfare Trust Fund v. Kaufman & Broad, Inc.*, 707 F.2d 412, 418 (9th Cir. 1983) (citations omitted) [hereinafter *Laborers Health & Welfare*]).

## IV. *Discussion*

The aspect of coverage at issue in this case is the "major medical expense benefits" described in section 9 of the plan description. Section 9(b) states:

> If a covered employee incurs *Covered Medical Expenses* as described below, in excess of *Basic Benefits* and the *Deductible* in any calendar year, the Major Medical Expense Benefit provision pays 80% of any excess expense, subject to the *Stop Loss* provision provided in paragraph (i) and the maximum lifetime benefit set forth in paragraph (h).

(emphasis in original)

Section 9(d) defines "covered medical expenses" as "charges which a covered employee *is required to pay* for the following services and supplies received" (emphasis added), and lists various hospital, medical, diagnostic, and related services. Section 9 does not limit the major medical expense benefit to a schedule of reasonable and customary charges for specified services. This is in contrast to section 8(b), which expressly limits surgical benefits to reasonable and customary charges, a list of which is appended to the plan.

Section 10, the provision on which Edison relies to justify its imposition of a schedule

of benefit limits, is a compendium of general provisions applicable to both the basic (including surgical) benefit in section 8 and the major medical benefit in section 9. Section 10(c), entitled "Exclusions," provides that "[n]o benefits are payable under this Plan for [listed] charges," including

> (4) Charges for services and supplies which are:
> —not necessary for treatment of the injury, illness, or disease;
> —not recommended and approved by the attending physician;
> —charges deemed unreasonable by the Health Care Services Department; or
> —incurred while committing or attempting to commit an unlawful act.

Appellee argues that the first and third exclusions in section 10(c)(4) entitle it to refuse to reimburse dependents for medical expenses that otherwise would be covered but that exceed Edison's unilaterally adopted schedule of fee limitations for particular medical procedures. Appellee reasons that section 10(c)(4) allows it to exclude charges which it deems "not necessary for treatment" or "unreasonable." Appellant counters that the parties did not intend section 10 to allow Edison to impose of its own accord a schedule limiting charges for procedures under section 9. Appellant argues that such a schedule of limitations is precluded by section 9(d), which defines the benefit amount as the amount that the covered dependent "is required to pay." Appellant cites various parol evidence demonstrating that this was Edison's understanding of the agreement. In particular, appellant observes that Edison did not attempt to use section 10(c)(4) to impose a schedule of reasonable and customary charges on beneficiaries for over fifteen years; section 10(c)(4) was part of the original contract drafted in 1968. The employer replies that the district court appropriately disregarded this evidence because the contract was unambiguous on its face and the parol evidence rule therefore required its exclusion.

We disagree with the district court that the contract expressly authorizes Edison to adopt a schedule limiting reimbursements

for major medical benefits to charges Edison deems "reasonable and necessary." The definition of "covered medical expenses"—charges that the covered dependent "is required to pay" for specified medical services—conflicts with this interpretation of section 10(c)(4). If the benefit covers whatever fee the dependent is required to pay for a service that is listed, as section 9(d) seems to mandate, the benefit may sometimes exceed the amount Edison deems reasonable for that particular service. Yet section 10(c)(4) allows Edison to exclude "charges [it deems] unreasonable." Therefore, the contract's provisions conflict.

■ When the meaning of an agreement is ambiguous on its face and contrary inferences as to intent are possible, an issue of material fact exists for which summary judgment ordinarily is inappropriate. *Arizona Laborers*, 753 F.2d at 1517–18 (citing *Laborers Health & Welfare*, 707 F.2d at 418). The court should look to parol evidence to determine what the parties intended the conflicting provisions to mean. *See, e.g., Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1327 (9th Cir.1987) [hereinafter *Pierce County* ]; *Kemmis v. McGoldrick*, 767 F.2d 594, 597 (9th Cir.1985). *See generally* 3 *Corbin on Contracts* § 536, at 27–28 (1960). This circuit has noted that this general principle of contract law applies with even greater liberality in disputes regarding collective bargaining agreements. "In ascertaining the intent of the parties to a collective bargaining agreement, 'the trier of fact may look to the circumstances surrounding the contract's execution, including the preceding negotiations.... *It may also consider the parties' conduct subsequent to contract formation ... and such conduct is to be given great weight.'* " *Arizona Laborers*, 753 F.2d at 1518 (citing *Laborers Health & Welfare*, 707 F.2d at 418 (citations omitted; emphasis added)); *accord Pierce County*, 827 F.2d at 1327.

■ Construing all evidence in the light most favorable to, and making all reasonable inferences in favor of, the non-moving party, we must determine whether it is possible to reconcile the two conflicting provisions in a manner consistent with that party's claim. If so, summary judgment must be denied. *Arizona Laborers*, 753 F.2d at 1518. We find that the appellant's interpretation of the contract is reasonable. Section 9(d) appears to preclude a limitation on the amounts of benefits paid for included services. Section 10 may be interpreted, as Local 47 suggests, as denying any benefits at all for particular *services or supplies* which are unnecessary or unreasonable, rather than as permitting Edison to limit benefit payments for covered services or supplies to "reasonable" amounts. This interpretation is not clearly unreasonable, particularly when the "unnecessary" and "unreasonable" language is viewed in the context of the rest of section 10(c)(4) and of the contract as a whole. Section 10(c)(4) states that *"No benefits* are payable ... for ... charges for *services and supplies which are:*—not necessary ...;—not recommended ...;—charges deemed unreasonable ...; or incurred while committing ... an unlawful act" (emphasis added). Benefit Plan (emphasis supplied). The first, second, and fourth prohibitions seem to exclude any benefits for particular services and supplies, regardless of their cost. Only the third—"charges deemed unreasonable"—may be construed as allowing a limitation on the amount of benefits paid for otherwise included services and supplies. The document as a whole also supports Local 47's interpretation of this clause as allowing exclusion of unreasonable services, but not limitation of benefits paid for otherwise included, reasonable services. Although the parties included a rate schedule for surgical benefits in the previous section (section 8), they did not do so for the major medical benefits at issue here (section 9). Had the parties intended section 9 benefits to be limited by a schedule of reasonable and customary fees, they clearly knew how to do it.

Edison's conduct subsequent to formation of the contract also supports appellant's suggested reconciliation of the two provisions. Although section 10(c)(4), on

which appellee relies, was drafted into the original contract in 1968, appellee did not impose a schedule of fees on section 9 benefits until 1984. Moreover, appellant provided evidence that Edison tried to negotiate such a limitation in 1983. Presenting the proposal, Edison's spokesperson explained:

> Currently ... the plan talks about reasonable and customary as it relates to medical expenses on surgical procedure. But there are other portions in the plan where it talks about actual expenses. And we would like to modify those to a reasonable and customary standard. Once again, here we're talking about the fact that if you're paying actual expenses, whatever those actual expenses are, that you have some unlimited conditions. And it's our belief there ought to be some limitations to payments.

This evidence strongly suggests that until 1984 Edison interpreted the contract to preclude imposition of a schedule of maximum fees for major medical benefits. "Such a belief is certainly of significant probative value in ascertaining the parties' intent." *Arizona Laborers*, 753 F.2d at 1519–20.

We conclude that "[a]t the time [the court] made its summary judgment ruling, it did not have all the necessary information before it, and the information it did have was not such as would support an award in favor of the Employer." *Id.* Nor may the district court's decision be upheld on the ground of deference to Edison's interpretation of the trust. The Supreme Court's recent decision in *Firestone Tire & Rubber Co. v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), makes clear that courts must review *de novo* an administrator's interpretation of an employee benefit plan governed by ERISA for purposes of actions under section 1132(a)(1)(B), unless the plan gives the administrator discretionary authority under the terms of the plan. *Id.* at 956. The benefit plan in this case did not give SCE such authority. The term "charges deemed unreasonable by the Health Care Services Department" does not vest Edison with discretionary authority to construe the terms of the contract as a whole and to determine which of two conflicting terms should govern. Therefore, *de novo* review is required. After considering all the relevant facts, the district court will be in a position to determine the intent of the parties regarding the conflicting provisions of the collective bargaining agreement. Therefore, we REVERSE and REMAND for further proceedings consistent with this opinion.