959 F.2d 241
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
OREGON LABORERS-EMPLOYERS TRUST FUNDS,
Plaintiff-Appellant/Cross-Appellee,
v.
PACIFIC FENCE AND WIRE COMPANY, Defendant-Appellee/Cross-Appellant.
 Nos. 90-35540, 90-35564.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 3, 1992.
Decided April 13, 1992.
 
 Before CYNTHIA HOLCOMB HALL, O'SCANNLAIN and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We consider whether a term in a collective bargaining agreement is ambiguous as a matter of law. Because we conclude that the term at issue here is not ambiguous, we reverse and remand.
 
 
 3
 * On September 3, 1974, Pacific Fence and Wire Company ("Pacific Fence") and the Oregon, Southern Idaho, and Wyoming District Council of Laborers (the "Union") entered into a collective bargaining agreement. The collective bargaining agreement incorporated by reference the Master Labor Agreement then in effect, and all subsequent Master Labor Agreements (the "Master Agreement" or "Agreement"). The Master Agreement was negotiated by a group of employers and the Union.
 
 
 4
 Under the Master Agreement, Pacific Fence was obligated to make contributions to the Oregon Laborers-Employers Trust Funds (the "Trust Funds") based on the number of hours its employees worked, to the extent such work was within the scope of the Agreement. These contributions were to pay for fringe benefits for Pacific Fence employees.
 
 
 5
 In 1989, the Trust Funds conducted an audit of Pacific Fence, covering the period from January 1, 1983 to March 1989. The Trust Funds claimed a significant deficiency in Pacific Fence's contributions, and demanded payment of $196,590 in delinquent contributions, $23,633 in liquidated damages, $71,216 in accrued interest through April 20, 1989, and $1,013 in auditor's fees for a total of $292,452. Pacific Fence did not make payment.
 
 
 6
 The Trust Funds brought suit against Pacific Fence in district court under the Labor Management Relations Act, 29 U.S.C. § 185(a), and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, to account for and to collect the allegedly delinquent contributions. The parties made cross-motions for summary judgment. Pacific Fence contended that the Master Agreement only required it to make contributions to the Trust Funds when its employees worked at industrial construction sites at which members of Local 296 of the Union were employed. Because Pacific Fence employees seldom worked in such a setting, Pacific Fence argued that it owed no further contributions. The Trust Funds countered that the Agreement covered work at all commercial construction sites.
 
 
 7
 The district court denied both parties' motions for summary judgment, ruling that the term defining the scope of the Master Agreement was ambiguous. That being the case, extrinsic evidence regarding the parties' intent, subsequent conduct, and industry practices would have to be examined to determine the meaning of such term. Factual questions were presented regarding these items, precluding resolution on summary judgment.
 
 
 8
 After a four-day trial, the jury returned a special verdict in favor of Pacific Fence. The jury determined that the Agreement between Pacific Fence and the Union only required contributions to the Trust Funds "for work done on industrial construction projects where members of Local 296 were employed on such projects[.]" Accordingly, the jury concluded that Pacific Fence owed no money to the Trust Funds.
 
 
 9
 The Trust Funds filed a motion for judgment notwithstanding the verdict, or, alternatively, for a new trial. The district court denied the motion. Pacific Fence filed a petition for an award of attorneys' fees. Applying the factors set forth in Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980), the district court denied Pacific Fence's petition.
 
 
 10
 The Trust Funds appealed the judgment against them. Pacific Fence cross-appealed the district court's denial of its attorneys' fees request. We have jurisdiction over these timely appeals under 28 U.S.C. § 1291.
 
 II
 
 11
 At issue here is when Pacific Fence must make contributions to the Trust Funds. The Master Agreement incorporated by reference by the collective bargaining agreement between Pacific Fence and the Union requires that Pacific Fence make contributions at a certain hourly rate for all work within the scope of the Agreement. Thus, the scope of the Master Agreement defines the scope of Pacific Fence's obligations to the Trust Funds.
 
 
 12
 Article IV of the Master Agreement states: "This Agreement shall cover and apply to all on site activities of the Employer in the area and territory named in Article III."[1] The Trust Funds contend that the district court erred when it ruled this term defining the scope of the Agreement to be ambiguous.
 
 
 13
 Initially, we consider whether state contract law is applicable here. This action was brought under section 301(a) of the Labor Management Relations Act, codified at 29 U.S.C. § 185(a), which "creates a federal cause of action for breach of collective bargaining agreements." Miller v. AT & T Network Systems, 850 F.2d 543, 545 (9th Cir.1988). The Supreme Court has held "that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957); Accord Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 405 (1981). Hence, "[c]ollective bargaining agreements are to be interpreted by the application of federal law, not state contract law." Paige v. Henry J. Kaiser Co., 826 F.2d 857, 861 n. 4 (9th Cir.1987), cert. denied, 486 U.S. 1054 (1988) (citing Local 174, Int'l Bhd. of Teamsters v. Lucas Flour Co., 369 U.S. 95, 102 (1962)).
 
 
 14
 Thus, we turn to the federal law governing the interpretation of collective bargaining agreements. Section 302(c)(5) of the Labor Management Relations Act requires that the basis upon which employer contributions are to be made to employee welfare trust funds be set forth in writing. 29 U.S.C. § 186(c)(5); Kemmis v. McGoldrick, 706 F.2d 993, 996 (9th Cir.1983). We have held that "[t]he policy behind section 302(c)(5) requires that contract interpretation of fringe benefit provisions be confined to the written terms of the welfare trust fund agreement." Kemmis, 706 F.2d at 996.
 
 
 15
 Moreover, we may not rely on extrinsic evidence of the parties' intent when interpreting such written terms of the Master Agreement unless the Agreement is ambiguous. "Extrinsic evidence is inadmissible to contradict a clear contract term...." Pierce Cty. Hotel Emp. & Rest. Emp. Health Trust v. Elks Lodge, B.P.O.E. No. 1450, 827 F.2d 1324, 1327 (9th Cir.1987). On the other hand, "where a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed." Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co., 753 F.2d 1512, 1515 (9th Cir.1985) (quotation omitted). The basis for the rule that "extrinsic evidence [is] inadmissible to interpret, vary or add to the terms of an unambiguous written instrument" is that
 
 
 16
 [i]f parties to an agreement could not rely on written words to express their consent to the express terms of that agreement, those words would become little more than sideshows in a circus of self-serving declaration[s] as to what the parties to the agreement really had in mind. The parole evidence rule thus enables parties to rely on written instruments as embodying a complete memorial of their agreement, and to avoid costly and disruptive litigation over the existence of oral and implied terms that may or may not have been contemplated by the parties.
 
 
 17
 Wilson Arlington Co. v. Prudential Ins. Co., 912 F.2d 366, 370 (9th Cir.1990).
 
 
 18
 "The existence of an ambiguity must be determined as a matter of law." State Farm Mut. Auto. Ins. Co. v. Fernandez, 767 F.2d 1299, 1301 (9th Cir.1985). Accordingly, we review de novo the district court's ruling on ambiguity. We conclude that the term "all on site activities of the Employer" is not ambiguous, and hence that it was error to consider extrinsic evidence in interpreting this term.
 
 
 19
 "A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation." Kennewick Irrigation Dist. v. United States, 880 F.2d 1018, 1032 (9th Cir.1989). There is only one reasonable interpretation of the term "all on site activities": it means all work done at the construction site, as distinguished from work not done at the construction site, such as work performed at the home office of the employer. The term is clear on its face. We find it impossible to construe the word "all" to connote anything but its obvious meaning: the whole or entirety of that which it describes.
 
 
 20
 Excluding consideration of extrinsic evidence, as we must, we simply see no basis within the four corners of the Master Agreement for Pacific Fence's interpretation that "all on site activities" means only those industrial construction sites where members of Local 296 of the Union are employed. Ironically, neither party to this suit urges such a plain meaning interpretation, as evidenced by the fact that the Trust Funds are only seeking to collect contributions for work performed at commercial, non-residential construction sites. Pacific Fence's argument that such course of dealing limits the meaning of the term misconceives the Trust Funds' position. The Trust Funds argue that the Agreement does apply to all construction site activity, but that the Union has made a unilateral concession regarding residential construction site activity. In any event, " '[t]he fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous.' " Id. (quoting International Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1406 (9th Cir.1985)).
 
 
 21
 The district court was correct in its determination that a contract exists between Pacific Fence and the Union, but erred in its conclusion that the term defining the scope of such contract is ambiguous as a matter of law. Hence, we reverse the judgment of the district court.
 
 III
 
 22
 On cross-appeal, Pacific Fence contends that the district court erred in declining to award it attorneys' fees under section 502(g)(1) of ERISA, which states that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (emphasis added). This court has set out five factors that a district court should consider in exercising this discretion:
 
 
 23
 (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 24
 Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980).
 
 
 25
 Here, the district court carefully considered each of the five Hummell factors. Thus, the district court undoubtedly applied the correct legal standard. Further, its findings of fact were not clearly erroneous. See Thurman Indus. v. Pay 'N Pak Stores, 875 F.2d 1369, 1378 (9th Cir.1989) ("A district court abuses its discretion by basing its decision on clearly erroneous factual findings or by applying an incorrect legal standard."). Our holding reversing judgment for Pacific Fence merely makes the case that much stronger that it was not an abuse of discretion to deny Pacific Fence's petition for attorneys' fees.
 
 
 26
 We affirm the district court's denial of attorneys' fees to Pacific Fence. We remand to the district court consideration of the Trust Funds' request for attorneys' fees pursuant to section 502(g) of ERISA.
 
 IV
 
 27
 Because we hold that the term of the Master Agreement defining its scope is not ambiguous as a matter of law, and that such term means what it says, we do not reach the Trust Funds' other contentions. Nonetheless, we decline at this time to award to the Trust Funds the amount it claims based on its audit of Pacific Fence. Pacific Fence raised substantial questions at trial regarding the accuracy of the audit, particularly whether commercial jobs were adequately distinguished from residential jobs. Moreover, Pacific Fence has consistently maintained in the alternative to its contract interpretation argument that the Trust Funds are equitably estopped from collecting the allegedly delinquent contributions, based on the Trust Funds' conduct when Pacific Fence was audited in 1978. Because of the special verdict returned by the jury in favor of Pacific Fence, it was unnecessary for the jury to determine the amount of damages, or for the district court to address Pacific Fence's equitable estoppel defense. Thus we remand to the district court for consideration of the equitable estoppel defense, and, if necessary, for a jury trial[2] to determine damages.
 
 
 28
 Each party to bear their own costs.
 
 
 29
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Article III states that the "Agreement shall cover the entire State of Oregon" and certain counties in southern Washington. The geographical scope of the Agreement is not at issue in this appeal
 
 
 [2]
 The district court's ruling of November 30, 1989, concluding that there is a right to a jury trial in an action brought under the Labor Management Relations Act and ERISA to collect fringe benefit contributions, and accordingly denying the Trust Funds' motion to strike Pacific Fence's demand for a jury trial, was not challenged on appeal