827 F.2d 1324
 126 L.R.R.M. (BNA) 2359, 107 Lab.Cas. P 10,137
 PIERCE COUNTY HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES
HEALTH TRUST, and Hotel Employees and Restaurant
Employees Pension Trust, Plaintiffs-Appellees,
v.
ELKS LODGE, B.P.O.E. NO. 1450, Defendant-Appellant.
 No. 86-4208.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 6, 1987.
Decided Sept. 14, 1987.
 
 Robert A. Bohrer, Seattle, Wash., for plaintiffs-appellees.
 Curman Sebree, Tacoma, Wash., for defendant-appellant.
 Appeal from the United States District Court for the Western District of Washington.
 Before FARRIS, ALARCON and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Puyallup Elks Lodge B.P.O.E. No. 1450 (Lodge) appeals an award of delinquent employee benefit contributions to Pierce County Hotel Employees and Restaurant Employees Health Trust and Hotel Employees and Restaurant Employees Pension Trust (Trusts). The Lodge claims that the district court should have considered extrinsic evidence to interpret the meaning of an ambiguous contract term, and that the action is barred by modification, the statute of limitations, estoppel, and laches. We affirm.
 
 BACKGROUND
 
 2
 The Lodge entered into consecutive collective bargaining agreements in 1974, 1977, 1980, and 1983 with the Hotel Employees & Restaurant Employees Union Local No. 8 (Union) and its predecessor union locals. Each contract obliged the Lodge to pay pension and health contributions to the Trusts for "any person performing work covered by this agreement, whether such employees are members of the union in good standing or not."
 
 
 3
 The Trusts are third party beneficiaries of the collective bargaining agreements and are multiemployer employee benefits plans governed by section 302 of the Labor-Management Relations Act (LMRA), 29 U.S.C. Sec. 186, and section 401 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1101.
 
 
 4
 From 1974 through 1985, the Lodge failed to contribute to the Trusts for nonunion temporary employees. In 1979, Floyd Dawson, the Lodge general manager, sent a letter to William Pollack, a secretary of the Union and chairman of the Trusts. The letter confirmed an oral agreement between Dawson and another Union official exempting temporary workers from contributions. During contract negotiations in 1983, the Union and the Lodge again orally agreed to exempt temporary workers. An independent auditor examined the Lodge's payroll records in August 1984 and discovered the Lodge's failure to contribute for those workers.
 
 
 5
 The Trusts sued the Lodge in February 1985 for unpaid contributions accruing from 1980 to 1985 under section 301 of LMRA, 29 U.S.C. Sec. 185, and sections 502(a)(3) and 515 of ERISA, 29 U.S.C. Secs. 1132(a)(3), 1145. The Lodge filed a motion for summary judgment based on the statute of limitations, which was denied. At trial, the Lodge offered the 1979 letter to show an agreement or modification exempting temporary workers from contributions. The court refused to consider the letter to vary the collective bargaining agreement and rejected the modification defense. Judgment was entered against the Lodge for $54,546.24 in unpaid contributions accruing from November 1980 through July 1985, liquidated damages, and interest.
 
 DISCUSSION
 I. CONTRACT INTERPRETATION
 
 6
 The district court disregarded extrinsic evidence to interpret the collective bargaining agreements, finding instead that the agreements unambiguously required contributions for temporary workers. The Lodge argues that the contracts are ambiguous and that the court should have considered a side agreement, the parties' conduct, and industry custom to interpret the parties' intent. We review the interpretation of a contract term de novo. Kemmis v. McGoldrick, 767 F.2d 594, 597 (9th Cir.1985).
 
 
 7
 Extrinsic evidence is inadmissible to contradict a clear contract term, Audit Servs. v. Rolfson, 641 F.2d 757, 761 (9th Cir.1981), but if a term is ambiguous, its interpretation depends on the parties' intent at the time of the contract's execution, Kemmis, 767 F.2d at 597, in light of earlier negotiations, later conduct, related agreements, and industrywide custom, Arizona Laborers, Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co., 753 F.2d 1512, 1517-18 (9th Cir.1985).
 
 
 8
 Article I of each collective bargaining agreement recognizes the Union as the exclusive bargaining agent of all Lodge employees working in the specified classifications. Employees are defined as all Lodge employees excluding office employees, owner-supervisors and their close relatives. Thus, nonunion temporary employees performing work in the agreements' specified classifications are members of the bargaining unit and are defined as employees under the agreements.
 
 
 9
 The Lodge nevertheless maintains that it is not obligated to contribute to the Trusts for nonunion temporary workers. Articles XX and XXI require the Lodge to contribute to the Trusts for "any person performing work covered by this agreement, whether such employees are members of the union in good standing or not." The Lodge argues that Articles XX and XXI are ambiguous because they can be read as requiring contributions either for employees who are union members "whether or not in good standing" or for all bargaining unit employees "whether or not members of the union." Thus, the Lodge contends, the court should have considered evidence that the parties did not intend to require contributions for nonunion workers.
 
 
 10
 The Lodge has attempted to create an ambiguity where none is present. Articles XX and XXI require contributions for any person performing work under the agreement, meaning any employee in the bargaining unit as defined in Article I. The class of bargaining unit employees is not limited to union members. The contribution provisions can reasonably be read but one way: the Lodge must make contributions for any covered employee, whether or not a union member. Since the agreements unambiguously require contributions for temporary employees, the court correctly disregarded extrinsic evidence of the parties' intent.
 
 II. CONTRACT DEFENSES
 
 11
 The Trusts sought to recover delinquent contributions under both section 502 of ERISA, 29 U.S.C. Sec. 1132, and section 301 of LMRA, 29 U.S.C. Sec. 185. The relief they sought is available under either statute and the district court entered judgment under both. The Lodge asserts various defenses to both the ERISA and LMRA claims. Because we reject each defense to the Trusts' ERISA claim, we need not decide whether any defense bars their LMRA claim.
 
 A. Contract Modification
 
 12
 The Lodge claims that the Union agreed to modify the contract in 1979, relying on the Lodge's 1979 letter. The parties, however, entered into a new bargaining agreement in November 1980 and the disputed unpaid contributions accrued from November 1980 to July 1985 pursuant to the 1980 contract and a later contract negotiated in 1983. The 1979 letter allegedly showing the parties' prior understanding is inadmissible to contradict the unambiguous terms of the 1980 contract. Appalachian Power Co. v. FPC, 529 F.2d 342, 350 n. 60 (D.C.Cir.), cert. denied sub nom. Kentucky Utils. Co. v. FPC, 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976). The parties may modify their contract only by a later agreement. Id.
 
 
 13
 The Lodge also contends that the Union orally agreed during contract negotiations in 1983 to modify the bargaining agreement to exclude temporary employees. Section 302(c)(5) of LMRA, however, requires that payments from an employer to an employee benefit trust fund be made according to a "written agreement" setting forth "the detailed basis on which such payments are to be made." 29 U.S.C. Sec. 186(c)(5)(B). An employer and union therefore cannot orally modify the terms of employee benefit provisions of a collective bargaining agreement. Waggoner v. Dallaire, 649 F.2d 1362, 1366 (9th Cir.1981). Otherwise, "[e]mployees, basing their futures on the promise of an old-age pension provided in a union contract, may discover in later years to their surprise that an oral side-agreement had eroded the worth of their pension rights." Id.; accord Operating Eng'rs Pension Trust v. Giorgi, 788 F.2d 620, 622 (9th Cir.1986). We have held that section 302(c)(5) of LMRA precludes the defense of oral modification of a collective bargaining agreement to a multiemployer trust fund's contribution claim under section 502 of ERISA, 29 U.S.C. Sec. 1132. San Pedro Fishermen's Welfare Trust Fund Local 33 v. Di Bernardo, 664 F.2d 1344, 1345 (9th Cir.1982). Thus, the trial court properly rejected the modification defense to the Trusts' ERISA claim.
 
 B. Statute of Limitations
 
 14
 A ruling on the proper statute of limitations is a question of law which we review de novo. In re Swine Flu Prods. Liab. Litig. (Sanborn v. United States), 764 F.2d 637, 638 (9th Cir.1985). The ERISA provision authorizing a civil action by a plan fiduciary, 29 U.S.C. Sec. 1132, does not contain a statute of limitations. We therefore must choose the limitations period from a statute governing analogous claims. Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc., 823 F.2d 289, 297-98 (9th Cir.1987). We will borrow the forum state's statute of limitations governing breach of contract claims for ERISA collection actions so long as application of the state statute's time period would not impede effectuation of federal policy. Id. at 297-98.
 
 
 15
 In Hawaii Carpenters we held that Hawaii's six year breach of contract limitations period applied to ERISA enforcement actions. At 298. We found that a six year limitations period gave a trust fund ample opportunity to recover delinquent contributions, in accordance with Congress' intent to assure adequate funding of pension plans and to reduce procedural obstacles to recovery of benefits due. Id. at 298; accord Trustees for Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell, 812 F.2d 512, 517 (9th Cir.1987) (applying Alaska's six year contract statute of limitations). We therefore apply Washington's six year statute of limitations for actions on written contracts, Wash.Rev.Code Sec. 4.16.040 (West Supp.1987), to the Trusts' ERISA claim arising in Washington.
 
 
 16
 A cause of action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know of the injury that is the basis of the action. Alexopulos v. San Francisco Unified School Dist., 817 F.2d 551, 555 (9th Cir.1987). Even assuming that the statute of limitations began to run in June 1979, when one trustee allegedly learned of the Lodge's practice, the Trusts' action would not be time barred under the six year statute.
 
 C. Estoppel and Laches
 
 17
 The Lodge argues that the Trusts are barred by the equitable defenses of estoppel and laches from asserting the express terms of the employee benefits provision. The Lodge raised both defenses in its trial brief but failed to assert them in the pretrial order or to request modification of that order, and the trial court entered no findings or conclusions as to either defense. Under Fed.R.Civ.P. 16(e), a pretrial order "shall control the subsequent course of the action unless modified by a subsequent order," and the order "shall be modified only to prevent manifest injustice." Issues not preserved in the pretrial order are eliminated from the action. The Trusts had the right to rely on the pretrial order as governing the issues in dispute, and had no opportunity to argue the merits of the equitable defenses in their brief. The trial court thus appropriately restricted its decision to those issues raised in the pretrial order and disregarded issues raised only in the trial brief. See Seymour v. Coughlin Co., 609 F.2d 346, 348-49 (9th Cir.1979) (failure to include issue in pretrial order or to raise issue until after trial court entered proposed findings of facts and conclusions of law precluded appellate review), cert. denied, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980); 3 J. Moore, Moore's Federal Practice p 16.19, at 16-63 to -65 (2d ed. 1985) (the parties are bound by their agreement in the pretrial order "to limit the issues, and may not introduce at the trial issues not among those included in the order"); cf. also Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., 795 F.2d 1501, 1507 (9th Cir.1986) (failure to raise argument in pretrial conference order or at trial was waiver); Southern Cal. Retail Clerks Union & Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1262, 1264 (9th Cir.1984) (failure to include issue in pretrial order constituted waiver, even though raised earlier in the proceeding). Moreover, the Lodge did not request the trial court to amend its findings of fact and conclusions of law so as to rule on the equitable defenses and we consequently lack a properly developed factual record upon which to review the merits of them. Finally, our refusal to pass on these defenses is not manifestly unjust. See Seymour, 609 F.2d at 349 (issues not properly raised below precluded from appellate review absent manifest injustice, such as a recent change in the law).
 
 III. ATTORNEY'S FEES
 
 18
 Because the Trusts prevailed, they are entitled to their attorneys' fees on appeal under ERISA. 29 U.S.C. Sec. 1132(g)(2)(D); see Southwest Adm'rs., Inc. v. Rozay's Transfer, 791 F.2d 769, 778 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). The Trusts are directed to file their bill of costs under 9th Cir. R. 39-1.
 
 CONCLUSION
 
 19
 We AFFIRM the judgment for the Trusts in all respects under ERISA, and consequently do not decide whether the Trusts should also have prevailed under LMRA.