NATIONAL SHOPMEN PENSION
FUND, et al., Plaintiffs,

v.

BURTMAN IRON WORKS, INC., and
Quality Structures of America,
Inc., Defendants.

CIV.A. No. 1:00CV01072ESH.

United States District Court,
District of Columbia.

July 13, 2001.

Marc Harold Rifkind, Slevin & Hart, P.C., Washington, DC, Harold N. Mack, Haverhill, MA, for Plaintiff.

Marshall B. Babson, Mark L. Glassman, Jones, Day, Reavis & Pogue, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Before the Court are the motion for summary judgment of plaintiffs National Shopmen Pension Fund (the "Fund") and its Trustees, the opposition of defendants Burtman Iron Works, Inc. ("Burtman") and Quality Structures of America, Inc. ("Quality"), and plaintiffs' reply. Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(g)(2), which entitles trustees to bring an action for or on behalf of a plan to collect delinquent contributions. This action is also brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which provides for enforcement of the terms of a collective bargaining agreement. Plaintiffs seek to recover delinquent contributions, interest thereon, liquidated damages, attorney's fees, audit fees, and other costs. Plaintiffs also seek an injunction preventing defendants from failing to furnish required contributions and remittance reports in a timely fashion. Based on the record before the Court,

plaintiffs' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The National Shopmen Pension Fund is a joint labor-management fund that provides pension, retirement, and related benefits to the eligible employees of those employers who contribute to the Fund. Employers contribute to the Fund pursuant to various collective bargaining agreements with affiliated Shopmen's Local Unions of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers (the "Union"). Burtman is a Massachusetts corporation, and Quality is a Rhode Island corporation. Both defendants conduct business in the State of Massachusetts. The Union and Burtman have been parties to and bound by a series of collective bargaining agreements since 1995, and the Union has been the exclusive bargaining representative of Burtman's production and maintenance employees. The two applicable agreements were signed in 1995 and 1998. The agreements require Burtman to pay 71 cents into the Fund "for each hour of pay paid to each employee . . . .".

In February 1999 Quality moved all of its operations from Rhode Island to Burtman's Readville, Massachusetts facility. Plaintiffs and defendants have jointly stipulated that Burtman and Quality constitute a single employer, and therefore, they are jointly and severally liable for any failure to contribute to the Fund. *See Board of Trustees, Sheet Metal Workers' Local Union 102 Health Benefit Fund v. Gibson Brothers,* No. 820329, 1982 WL 2079 (D.D.C. Oct. 27, 1982)(single employer doctrine enunciated in *Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Services of Mobile, Inc.,* 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965), provides the appropriate framework for determining non-signatory's liability for obligations under the terms of signatory's collective bargaining agreement).

The Fund hired Patrick Reid, a certified public accountant, to perform a payroll review for the period 1996 through 2000. Reid's payroll review showed that defendants failed to report to the Fund a number of hours allegedly amounting to a delinquency of $48,805.77. It is also alleged that defendants have breached the agreement by failing to remit contributions or remittance reports (reports listing the hours for which contributions are due) for Burtman's covered employees for January 2001 and for Quality's covered employees for January through March 2001. Based on hours reported to the Fund, defendants claim $8,032.90 for January and February 2001.

The motion raises six principal issues: (1) whether defendants are obligated under the contract to make contributions on behalf of temporary employees; (2) whether defendants are obligated under the contract to make contributions for the hours of paid commuting time; (3) whether defendants must contribute for part-time employee Jose Neal; (4) whether defendants must contribute to the fund starting on the first day of employment; (5) whether plaintiffs are abusing their discretion by not waiving liquidated damages, attorney's fees, audit costs, and other costs; and (6) whether plaintiffs are entitled to an injunction to require defendants to submit contributions and remittance reports.

## LEGAL ANALYSIS

### I. Standard of Review

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affida-

vits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

■ "Whether an agreement is clear on its face or ambiguous has a direct bearing on the appropriateness of summary judgment in contract disputes. Generally, interpretation of a facially clear contract is considered a question of law and is for the court." *NRM Corp. v. Hercules, Inc.,* 758 F.2d 676, 682 (D.C.Cir.1985) (quotations and citations omitted). In a matter involving a contract, summary judgment is appropriate where the agreement "admits of only one reasonable interpretation." *United Mine Workers of America 1974 Pension v. Pittston Co.,* 984 F.2d 469, 473 (D.C.Cir.1993).

Section 502 of ERISA allows plan fiduciaries to sue employers in federal court to recover delinquent payments to benefit plans. 29 U.S.C. § 1132. Section 515 of ERISA states that every "employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

## II Temporary Employees

From approximately April 2000 through October 2000, defendants employed production and maintenance workers who were hired through two temporary employment agencies. According to defendants, 95% of these temporary workers' time was devoted to work covered by the 1998 Agreement. (*See* Memorandum in Support of Plaintiffs' Motion for Summary Judgment Ex. I at p. 41–42.) However, defendants argue that they are not obligated to contribute to the Fund for these employees.

■ Defendants claim that they do not owe contributions to the Fund because the temporary employees are not common-law employees based on the 12–factor test articulated in *Nationwide Mutual Insurance Company v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). As a result, defendants argue that at a minimum, there are issues of fact as to whether the temporary employees are common-law employees. *Darden,* however, is inapposite because it addressed whether a person had standing under ERISA to bring an action for benefits. *Id.* at 320–321, 112 S.Ct. 1344. Determining whether temporary employees hours are covered by the collective bargaining agreement is an issue of contract interpretation, because "em-

ployers must contribute to multiemployer benefit plans according to the terms of the collective bargaining agreement." *Alston v. Dollar Rent A Car Systems, Inc.,* No. 96–7531, 1998 WL 531828, *3 (S.D.N.Y. Aug.24, 1998).

■ In the present case, Section 1(A) of the 1998 Agreement states, "This Agreement shall be applicable to all full-time production and maintenance employees of the Company (hereinafter referred to as 'employees') engaged in the fabrication of iron, steel, metal, and other products, or in maintenance work in or about the Company's plant...." Because the temporary employees in question engaged in the described work and worked full time, this agreement unambiguously requires contributions for temporary employees.

The situation here is akin to that in *Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450,* 827 F.2d 1324 (9th Cir.1987), where the Ninth Circuit found that the clause requiring pension contributions "for any person performing work covered by this agreement, whether such employees are members of the union in good standing or not" was unambiguous. *Id.* at 1327. For eleven years, the employer had failed to contribute to the trust for non-union temporary employees, and the employer maintained that it was not obligated to contribute on their behalf. *Id.* at 1326. However, under the contract employees were defined as "all Lodge employees excluding office employees, owner-supervisors and their close relatives." Based on this definition, the Court held that non-union temporary employees performing work were employees within the meaning of the contract. *Id.*

Similarly, the Sixth Circuit has "construed a definition of employees by job classification to require coverage by the collective bargaining agreement of all em-

ployees within those classifications, regardless of union membership." *Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Company,* 749 F.2d 315, 318 (6th Cir.1984) (citing *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 698 F.2d 802, 804–05 (6th Cir.1983)). The Sixth Circuit has also said, "The absence of language distinguishing union and nonunion employees indicates that the agreement covers all employees." *Teamster's Local 348,* 749 F.2d at 318 (citing *Carpenters and Millwrights Health Benefit Trust Fund v. Gardineer Dry Walling Co.,* 573 F.2d 1172, 1177 (10th Cir.1978)).

The instant collective bargaining agreement applies to full-time production and maintenance employees, and thus, applying the reasoning of the only two Circuits to have addressed the issue, one must conclude that all of the full-time employees engaged in that work should be covered by the agreement, regardless of whether they are temporary employees or not.

Moreover, because the collective bargaining agreement here does not specifically distinguish or exclude temporary employees, the agreement requires contributions for temporary employees. Summary judgment is therefore granted for the plaintiffs with respect to the temporary workers.

### III. Commuting Time

■ Next, defendants contend that they should not have to contribute to the Fund for the five hours of commuting time paid to Quality employees each week. The Court disagrees.

The 1998 Agreement provides for a contribution of seventy-one cents "for each hour of pay paid to each employee to whom this agreement is applicable...." Under the terms of the contract, there is

no distinction between paid work time and paid commuting time. In evaluating a collective bargaining agreement, a court should adhere to "the plain and commonly accepted meaning of the word 'paid.'" *Scotto v. Brink's Inc.*, 962 F.2d 225, 227 (2d Cir.1992). In *Scotto,* the employer was required to contribute one dollar and fourteen cents ($1.14) "for all hours paid," and based on this requirement, the court held that the employer had to contribute for all paid hours, including time paid for sick or vacation days. *Id.* at 228. *See also Vernau v. Bowen Enterprises,* 648 F.Supp. 721, 722 (W.D.Pa.1986) (collective bargaining agreement stating contributions applied to all hours paid included vacation hours).

Accordingly, based on the contract here, defendants are required to pay into the Fund for all hours paid, without regard to whether those hours are spent commuting. Summary judgment is granted to the plaintiffs with respect to this claim.

## IV. Part-time Employee Jose Neal

■ The Fund concedes that part-time employees are not covered by the agreement. However, the Fund seeks contributions of $514.23 for one part-time worker, Jose Neal, because Neal's hours were marked as "union hours," and plaintiffs appear to assume that this reference means full-time hours covered by the collective bargaining agreements. (Patrick Reid Aff. ¶ 17.) The Fund fails to provide the documentation where the defendants marked Neal's hours as "union hours." In addition, the Fund was well aware that Neal was a part-time employee, recognizing that he changed his status from full to part-time on November 24, 1998. (*Id.* at ¶ 16). The agreement is clear and unambiguous in its exclusion of part-time workers. Moreover, in the absence of any evidence to support plaintiffs' assumption

that Neal was working full-time, the Court cannot draw such an inference, since on motions for summary judgment, "[a]ny doubts must be resolved in favor of the nonmoving party, and the nonmoving party is entitled to all justifiable inferences." *International Bhd. of Painters and Allied Trades Union and Industry Pension Fund v. Duval,* 925 F.Supp. 815, 821 (D.D.C.1996). Therefore, the Fund's motion for summary judgment in the amount of $514.23 with respect to Neal's hours is denied.

## V. Probationary Employees

Defendants claim that Burtman did not contribute into the Fund on behalf of new hires until they attained union membership, or after 30 days of employment. At that time, Burtman claims that it did contribute retroactive to the date of hire. However, Burtman contends that it is not obligated to contribute for probationary employees who quit or were terminated before acquiring union membership.

■ The agreement is clear and unambiguous in requiring contributions for employees starting on their first day of work. Section 14A specifies that "for each hour of pay paid to each employee," Burtman will contribute seventy-one cents. Defendants concede that "a literal reading of Section 14a appears to require an employer to make contributions for new hires starting with the first hour of work...." (Defendants' Opposition at 10.) In addition, Section 17(A) of the 1995 and 1998 agreements speaks specifically to the issue of new hires:

New employees and employees hired after a termination of seniority as the term seniority is defined in this Section shall be regarded as probationary employees until they have been employed by the Company within the bargaining unit described and set forth in Section 1

of this agreement a total of thirty (30) calendar days and *during such probationary period all the provisions of this agreement shall apply to such employees except the provisions of Subsection (B) of this Section . . .*" (emphasis added)

However, defendants claim that Burtman has historically commenced its contributions for new employees when they attained union membership. Moreover, defendants assert that this practice was never challenged by the Local Union or the Trustees despite audits performed prior to 1996. (Philip E. Goodman Affidavit ¶ 31.) Thus, defendants essentially argue that plaintiffs have waived their right to demand contributions in strict compliance with the contract because of their subsequent conduct.[1]

 "Contract law has long recognized that parties to a contract may vary its terms by a subsequent course of conduct." *Sam Rayburn Dam Electric Coop. v. Federal Power Comm'n*, 515 F.2d 998, 1009 (D.C.Cir.1975). "[W]aiver is an intentional relinquishment of a known right. . . ." *Holt v. Winpisinger*, 811 F.2d 1532, 1541 n. 67 (D.C.Cir.1987). However, waiver is an affirmative defense. Fed. R.Civ.P. 8(c). Plaintiffs assert that defendants cannot raise waiver as an affirmative defense because of their failure to raise it in their answer and their failure to petition the Court for leave to amend their answer. "Rule 8(c) means what it says: affirmative defenses must be raised in a responsive pleading, not a dispositive motion." *Harris v. Secretary, U.S Dep't of Veterans Affairs*, 126 F.3d 339, 341 (D.C.Cir.1997). In *Harris*, defendant did not raise an affir-

mative defense in a responsive pleading and did not apply for leave to amend its answer under Rule 15(a). The Court said, "However, this procedural error need not necessarily cause loss of the defense. On remand, the government may seek leave to amend its answers." *Id.* In addition, "[i]n the District of Columbia, whether waiver exists is generally a question for the trier of fact. Such a finding turns on the intent of the party ostensibly waiving the right, a state of mind which must be culled from the specific facts and circumstances surrounding the purported relinquishment." *Britamco Underwriters, Inc. v. Nishi, Papagjika & Associates, Inc.*, 20 F.Supp.2d 73, 77 (D.D.C.1998). Accordingly, the Court will permit defendants twenty (20) days to file an amended answer. Because defendants will be permitted to raise this defense and because the Goodman affidavit raises a question of fact regarding whether the trustees here waived the right to demand contributions for probationary employees,[2] the Court cannot grant summary judgment for this issue.

## VI. Abuse of Discretion

Plaintiffs seek liquidated damages, interest, attorney's fees, costs of audit, and other costs of collection in accordance with ERISA, 29 U.S.C. § 1132(g)(2)(c), and the Fund's Collection Policy. Section 1132(g)(2)(c) provides:

In any action under this title by a fiduciary for or on behalf of a plan to enforce this section 515 (29 U.S.C.S. § 1145) in which a judgment in favor of the plain is awarded, the court shall award the plan—

(A) the unpaid contributions,

---

1. Alternatively, defendants may be claiming estoppel.

2. Although plaintiffs contest this affidavit, the Court finds that Goodman was in a position

to have personal knowledge of the financial records, since he was Treasurer and Chief Operating Officer of Burtman, and he has at least raised a colorable issue of fact.

(B) interest on the unpaid contributions,

(C) an amount equal to or greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A).

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

Defendants do not dispute that the Fund is entitled to recording of these fees and costs. Instead, they point to a section of their agreement, which states, "The Trustees shall have the authority, however, to waive all or part of the attorney fees or collection costs for good cause shown." Defendants claim that the Trustees have abused their discretion by not waiving these fees. This argument is unpersuasive.

▇ Defendants argue that the trustees should waive these fees because of Burtman's extremely poor financial condition. Defendants are mistaken in asserting that the Trustees have a duty to help maintain the financial viability of a member employer. Under ERISA Section 404(a), "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...." 29 U.S.C. § 1104(a)(1). Pension Funds have no fiduciary duty to employers. *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund*, 847 F.2d 113, 119 (3rd Cir.1988); *See Alton Memorial Hosp. v. Metropolitan Life Ins. Co.*, 656 F.2d 245, 249 (7th Cir.1981) (fiduciary duties under

ERISA, as a general rule, are owed to participants and beneficiaries only). According to the agreement, the trustees ultimately have discretion in deciding whether to waive the fees. Their decision not to waive the substantial fees they have incurred is not an abuse of that discretion, and thus, they are entitled to liquidated damages, interest, audit costs, and other costs of collection.

## VII. Injunction

▇ Plaintiffs also request that the Court enjoin defendants from failing to submit required contributions and remittance reports. "ERISA specifically provides for equitable remedies when there are nonpayments of required contributions." *Teamsters Local 639 Employers Trust v. Jones & Artis Constr. Co.*, 640 F.Supp. 223, 225 (D.D.C.1986) (citing *Laborers Fringe Benefit Funds v. Northwest Concrete & Construction, Inc.*, 640 F.2d 1350 (6th Cir.1981)). In *Teamsters Local 639*, the Court granted an injunction where the employer did not remit reports and contributions in a timely fashion. 640 F.Supp. at 225. The Court said that it was warranted because the effect of litigating the claim to collect contributions and reports "was to burden the Court with unnecessary pleadings, unnecessary status calls of counsel, and forestall a consideration of the merits of the litigation." *Id.* at 224. This case is similar because defendants have consistently been delinquent in remitting contributions and remittance reports. Quality has failed to file remittance reports or to make contributions since it moved its operations to Burtman's facility in February, 1999. In addition, Burtman has remitted no contributions or remittance reports for October 2000 through January 2001. Therefore, defendants are enjoined from failing to submit required contributions and remittance reports in accordance with the agreement.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment as to liability is granted with respect to every issue except for contributions for the hours of part-time employee Jose Neal and contributions for probationary employees. However, summary judgment as to damages cannot be determined in absence of a full adjudication of the two remaining issues regarding Neal and defendant's past practices with respect to probationary employees. A separate order accompanies this opinion.

## *ORDER*

Upon consideration of plaintiffs' motion for summary judgment, defendants' opposition thereto, and plaintiffs' reply, it is hereby

**ORDERED** that plaintiffs' motion for summary judgment is **GRANTED** as to liability on all issues except the part-time hours of Jose Neal and the hours for probationary employees; and it is

**FURTHER ORDERED** that plaintiffs' motion for summary judgment is **DENIED** as to the part-time hours of Jose Neal and the hours for probationary employees; and it is

**FURTHER ORDERED** that Defendants are enjoined from failing to remit contributions and remittance reports required by their collective bargaining agreement with Local 501 of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL–CIO; and it is

**FURTHER ORDERED** that the issue of damages, fees and costs must be held in abeyance pending a full adjudication of the above unresolved issues; and it is

**FURTHER ORDERED** that a status hearing will be held on September 6, 2001 at 11:00 a.m.[3]

**SO ORDERED.**

---

**3.** Defense counsel is reminded that he must have local counsel in this matter if he intends to represent defendants.