**BILL TEDRECK, Plaintiff,**

**v.**

**POUFA NOGA and NIKO NOGA,**
**a.k.a. FALANIKO NOGA, Defendants.**

High Court of American Samoa
Trial Division

CA No. 81-00

February 27, 2002

Before RICHMOND, Associate Justice, and LOGOAI, Associate Judge.
Counsel: For Plaintiff, Paul F. Miller
 For Defendants, Marie A. Lafaele

## OPINION AND ORDER

### Facts

On January 11, 1999, plaintiff Bill Tedreck ("Tedreck") entered into a loan agreement with defendant Poufa Noga ("Poufa") for $8,000.00. The loan agreement was for purchase of equipment and travel and was part of an arrangement for the Penina Boyz Band to be the regular band at Tedreck's night club, the Country Club, beginning on January 14, 1999. Poufa and her husband, defendant Niko Noga ("Niko"), organized the band. The agreement called for an interest free loan that was to be repaid through a $50.00 deduction from the band's wages for each of the three weekly shows to be performed. The equipment purchased was to remain under Tedreck's ownership and in his possession until the loan was paid off.

On the same day, January 11, 1999, Tedreck and Poufa entered into another written agreement memorializing the employment terms of the Penina Boyz Band. This agreement contained, among other details, specific language providing that the nature of the employment was "at-will" and that either party could end the relationship at any time. The agreement also indirectly referenced the loan agreement.

Between January 11, 1999, and May 6, 1999, Poufa made repayments totaling $2,425.00 to Tedreck. On May 6, 1999, Tedreck and Poufa entered into a third agreement adding $1,250.00 to the amount owed in exchange for an advance of $600.00 and Poufa's assumption of her parents' debt of $650.00 owing to Tedreck. This third agreement called

for Poufa to maintain loan payments under the terms of the original loan agreement. The agreement also stated that "should either party terminate the relationship or the country club be sold, all agreements remain binding." Sometime in mid-June 1999, the ownership of the Country Club passed from Tedreck to the American Samoa Government ("ASG"). Poufa and Niko received a letter from ASG on June 18, 1999, terminating their services at the Country Club. Poufa continued to make payments to Tedreck until July 2, 1999 at which point the outstanding balance on the loan agreement was $5,975.00.

On July 12, 1999, the parties entered into an amended contract. Niko was an additional signatory to this agreement and became an obligor to repay the balance owed on the January 11 loan transaction. This agreement allowed Poufa and Niko to take control of, and responsibility for maintaining, the music equipment purchased with the money from the original loan agreement. In exchange, Poufa and Niko agreed to make payments on the remaining $5,975.00 loan at a rate of $100.00 or more a week until the loan was repaid. Tedreck retained ownership of the equipment until full payment of the loan.

## Discussion

A. The Original Loan Agreement Contained No Guarantee of Continued Employment and The Parol Evidence Rule Prohibits Introduction of Any Evidence of an Oral Agreement Changing Those Terms.

The common law of contracts applies in American Samoa. *Dev. Bank of Am. Samoa v. Ilalio*, 5 A.S.R.2d 1, 5 (Trial Div. 1987). The parol evidence rule is part of the common law of contracts and applies to matters before this court. *Id.* This rule seeks to, "preserve integrity of written agreements by refusing to permit contracting parties to attempt to alter import of their contract through use of contemporaneous oral declarations." BLACK'S LAW DICTIONARY 1117 (6th ed. 1990). As a general rule, extrinsic evidence is inadmissible to contradict clear contract terms. *Audit Servs. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981). The court should look to extrinsic evidence only if the contract is ambiguous on its face. *United States v. Johnson*, 43 F.3d 1308, 1310 (9th Cir. 1995); *Pierce County Hotel Employees & Rest. Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1327 (9th Cir. 1987).

The two written agreements of January 11, 1999, are interwoven through their terms and should be read together. The loan was certainly part of the employment package. However, the employment agreement clearly creates an at-will employment situation. The employment term is

unambiguous. Tedreck was not obligated to employ Poufa and Niko, and their band, for any specific length of time, and we will not examine parol evidence to find otherwise.

B. Poufa and Niko Were Entitled to Reasonable Notice of Cancellation of The Employment Contract.

■ Poufa and Niko counterclaim for loss of expected income and costs incurred with the employment contract. This claim would only succeed if there was a contractual obligation that was breached by Tedreck. As discussed above, the contract was at-will and contained no continuing obligation on Tedreck. However, a contract that provides that it may be canceled "at any time" still requires reasonable notice for its cancellation. JOHN D. CALAMARI & JOSEPH M. PERILLO, THE LAW OF CONTRACTS § 4.12 (4th ed. 1998). In this matter, Poufa and Niko received constructive notice of the cancellation of the contract through receipt of ASG's letter terminating their services. Poufa and Niko certainly knew, upon receiving ASG's letter, that Tedreck was no longer the owner of the Country Club and that the new owner did not require their services. When looking at the totality of the circumstances surrounding the termination of the contract, including the preclusion of advanced notice because of the sale of the club, we find that the notice given was reasonable and that the counterclaim is without merit and should be dismissed.

C. The Obligations of Poufa and Niko are Controlled by the Agreement of July 12, 1999.

After the Country Club had been sold and after Poufa and Niko received notice that their band services were no longer needed, Poufa and Niko entered into a new agreement with Tedreck on July 12, 1999, to pay off the debt incurred in the original loan agreement. Therefore, in addition to the employment contract being at-will, and in addition to that contract being terminated with reasonable notice, this new agreement, requiring them to repay $5,975.00 at a rate of at least $100.00 a week, created an obligation for repayment. While Poufa and Niko already owed this debt, the transferring of possession of the music equipment by Tedreck constituted consideration for the new agreement. Poufa and Niko made three $100.00 payments to Tedreck on the new agreement, but then defaulted on further payments. As such, Poufa and Niko are in default on their loan obligations to Tedreck in the principal amount of $5,675.00.

### Order

The counterclaim filed by Poufa and Niko against Tedreck is dismissed. Poufa and Niko shall pay Tedreck the sum of $5,675.00 on his claim

against them. As the loan was interest free, so will be the judgment until the date of this decision. Interest shall accrue at the judgment rate of 6% per annum beginning with the entry date of this judgment. Payment of this judgment in full transfers title of the musical equipment to Poufa and Niko.

It is so ordered.